STEVENS *vs.* WILSON and others.

The third section of the act relative to *principals and factors or agents,* (*Stat. of* 1830, *p.* 203,) which declares that one entrusted with the possession of the goods of another, for the purpose of sale, shall be deemed the true owner, so far as to give validity to a disposition thereof for money advanced, does not protect a party who has made advances on goods to a factor, *with a knowledge that he was not the owner of the goods.*

ON error from the supreme court.    Wilson and the other defendants in error brought replevin against Stevens, in the superior court of the city of New-York, for a quantity of *feathers.* Verdict and judgment for the plaintiffs; which judgment was affirmed on error in the supreme court.    For a statement of the facts and the opinion of the court, see 6 *Hill,* 512.    The question in the case was, whether the defendant, who had made advances upon the feathers to one Colgate, the plaintiffs' factor, *with knowledge that he was not the owner of the property,* was entitled to hold it for such advances.

*A. Crist,* for the plaintiff in error.

*S. A. Foot,* for the defendants in error.

THE CHANCELLOR. Upon the charge of the judge the jury must have decided that the goods did not belong to Colgate, the factor or agent of the defendants in error, but were in his hands for sale as the factor of the real owners. And I think the judge who tried the cause, as well as the supreme court, was right in supposing that the act of 1830, for the amendment of the law relative to principals and factors or agents, (1 *R. S.* 762, *tit.* 5 *of 2d ed.*) does not authorize the agent or factor for the purposes of sale, to pledge the goods to a person who knows the character in which the pledgor holds the same. Mr. Justice Bronson, who delivered the opinion of the supreme court in this case, has correctly stated the rule of the common law, that an agent or factor, intrusted with the goods of his principal to sell, could not pledge the same so as to authorize the pledgee to hold them for advances made thereon to the factor or agent, even if he supposed the latter to be the real owner of the goods. (*Paterson* v. *Tash,* 2 *Strange,* 1178 ; *Daubigny* v. *Duval,* 5 *T. R.* 04.) Even where the principal had drawn upon the factor in anticipation of the sale of the goods, it was held in the cases of *Fielding* v. *Kymer,* (2 *Brod. & Bing.* 639,) and *Graham* v. *Dyster,* (6 *Maule & Sel.* 1,) that the factor was not authorized to pledge the goods. In this last case, Mr. Justice Abbott, afterwards Lord Chief Justice Tenterden, said it had been established by many decisions, and might be considered as a settled principle of law, that a factor could not pledge so as to transfer his lien to the pawnee. This rule of the common law was founded upon the principle that he who deals with one acting *ex mandato,* can obtain from him no better or different title than that which his mandate authorizes him to give.

The statute 4 *Geo.* 4, *ch.* 83, passed in July, 1823, altered the common law rule in England in this respect, as to persons dealing with the consignees of factors entrusted with goods for the purpose of sale, so far as to protect the rights of the pledgee to

the extent of the advances he had made, or the liabilities he had incurred, upon the faith of the pledge and the supposition that the nominal consignor, the factor, was the owner of the goods. But this statute contained an express exception of cases where the consignee was aware of the fact that the nominal consignor was not the real owner of the goods. It also contained a provision that the deposite or pledge of goods by the consignee thereof should give to the person with whom they were deposited or pledged the same right, and no other, that the consignee himself possessed. The provisions of that act appear to have been confined to consignees of goods, and persons dealing with them, where the consignees supposed the consignors were the real owners of such goods, when in fact such consignors had only been entrusted with the goods for the purpose of sale. The first section of the act of 6 *Geo.* 4, *ch.* 94, passed about two years afterwards, contained but a very slight modification of the previous act, so as to protect the consignee without notice, and others dealing with him, before they had notice that the person in whose name goods were shipped, with the assent of the owner, was not himself the real owner. But the second section of that act extended the protection to persons dealing with an agent or factor who had in his possession documentary evidence showing him *prima facie* to be the owner of the goods, and where the persons so dealing with him were ignorant of his fiduciary character, and had bought the goods or advanced money or negotiable securities upon the deposit or pledge of the goods and upon the faith of such *prima facie* evidence of ownership. The third section declared that persons taking such goods in deposit or pledge for an antecedent debt, even without notice of the fiduciary character of the agent or factor having in his possession such *prima facie* evidence of ownership, should acquire no other right or interest therein, as against the owner, than the agent or factor himself possessed ; but might acquire, possess and enforce the right to that extent. And the fifth section expressly authorized the taking of such goods in pledge from the agent, or broker, having such *prima facie* evidence of title, even with notice

of his fiduciary character; but the pledgee was only to obtain such right or interest therein as the pledgor himself possessed.

Our act relative to principals and factors or agents, in the first and second sections, protects consignees of merchandise shipped in the name of a person who is not the real owner, where they are ignorant of the fact that such consignor is not the owner. The third section then provides that "Every factor or other agent entrusted with the possession of any bill of lading, custom house permit, or warehouse-keeper's receipt for the delivery of any such merchandise, and every such factor or agent, not having the documentary evidence of title, who shall be entrusted with the possession of any merchandise for the purposes of sale, or as a security for any advances to be made or obtained thereon, shall be deemed to be the true owner thereof, so far as to give validity to any contract made by such agent with any other person for the sale or disposition of the whole or any part of such merchandise, for any money advanced, or negotiable instrument or other obligation in writing given by such other person upon the faith thereof." (1 *R. S.* 762, *tit.* 5, § 3, *of 2d ed.*) It is perfectly evident from the whole of this section, taken in connection with the second section and the previous law upon the subject, that the words, *on the faith thereof,* refer to the ownership of the goods; so as to protect the purchaser, or pledgee, who has advanced his money or given his negotiable note or acceptance or other written obligation, upon the faith or belief of the fact that the person with whom he dealt was the real owner of the property. Any other construction of the statute would do great injustice to the legislature who passed the act of 1830. For it would authorize the agent or factor to commit a fraud upon his principal, with the connivance of the purchaser or pledgee who had notice of the fiduciary character of the vendor or pledgor. It would also be in direct conflict with the seventh section of the same statute, which makes such a fraud an indictable offence, not only against the agent or factor, but also against every person who shall knowingly connive with or aid him in the commission of the fraud.

Our statute does not, as in the fifth section of the 6 *Geo. 4,*

*ch*. 94, authorize the agent or factor to pledge the goods of his principal to the extent of his lien, to persons who are aware of his fiduciary character and without any authority for that purpose from his principal. But even under the British statute it has been held that a mere liability of the agent or factor, upon acceptances for his principal, is not sufficient to give such agent or factor a lien which will authorize him to pledge the goods to a third person without the consent of his principal. In *Fletcher* v. *Heath*, (7 *Barn. & Cress.* 517,) and *Blandy* v. *Allan*, (*Danson & Lloyd's Merc. Cas.* 22,) the factor was under acceptances for his principal at the time he pledged the goods for advances thereon, but which acceptances the principal afterwards duly paid or provided for. And it was held that the pledgee could not hold the goods to the amount of the acceptances for which the factor was liable at the time the goods were pledged, but which he was not afterwards compelled to pay.

Here the judge who tried the cause not only gave to the defendant in the court below all his legal rights, but protected him so far as any equity existed as between the factor and his principals, if not much further. I therefore think the judgment of the supreme court should be affirmed.

LOTT, Senator. By the verdict of the jury in this case it is established, 1st. That the advances made by the defendant below to Colgate the factor, were made with the knowledge that he was not the owner of the goods pledged. 2d. That the defendant has been credited not only with all such advances as were applied by Colgate to the use or for the benefit of the plaintiffs, his principals, but also to the extent of the factor's right or interest, by way of lien, in the goods. The broad question is therefore presented whether a factor, having no lien on or other personal interest in the goods of his principal, is authorized by our law to pledge or deposit the same for advances made to himself, for his individual use and benefit, by a person who knows that he holds them as factor merely and not as owner.

It was a well settled rule of the common law, that a factor had no authority to pledge the property of his principal for his own

debt, either by an actual deposit thereof with the pawnee, or by placing in his hands the bill of lading or other indicia of ownership; and the rule appears to have been enforced with equal stringency in cases where advances had been made either to pay the duties chargeable on such goods, or for some other purpose connected with the sale thereof, and indeed when they had been made to meet bills drawn by the principal on the factor, for the whole or part of the price of the goods pledged; at least if the pawnee knew or had the means of knowing that he was dealing with a factor and not with the principal. (*Russell on Factors and Brokers,* 116 *to* 122, *and cases cited.*)

The expediency of this rule was doubted by judges, and in the mercantile community it was considered a matter of superior justice and wisdom that a factor or commercial agent who was intrusted with the apparent evidence of ownership of the property should be deemed the true owner in respect to third persons dealing with him *fairly,* in the course of business, as purchasers or mortgagees, and *in ignorance* of his real character. The attention of parliament was finally given to the subject, and an act was passed, in 1823, (4 *Geo.* 4, *ch.* 83,) modifying to a great extent this rule of the common law. But not proving adequate to the object intended, a further act was passed, in 1825, (6 *Geo.* 4, *ch.* 94,) conferring the power on the factor, among other things, to pledge the property of his principal by depositing the goods or the evidence of title in the hands of the pledgee when he made advances to the factor on the faith of such deposit, without notice of his being factor; and also protecting the rights of the pledgee, when he knew he was dealing with an agent, to the extent of the lien which he himself could have enforced at the time of the pledge.

A statute, similar in its general objects, was passed by our legislature in 1830. (*Laws of* 1830, *ch.* 179, *p.* 203.) By the third section of this act it is provided that "every factor or other agent intrusted with the possession of any bill of lading, custom-house permit, or warehouse-keeper's receipt for the delivery of any such merchandise, and every such factor or agent not having the documentary evidence of title who shall be intrusted

with the possession of any merchandise for the purpose of sale, or as a security for any advances to be made or obtained thereon, shall 'be deemed to be the true owner thereof, so far as to give validity to any contract made by such agent with any other person, for the sale or disposition of the whole or any part of such merchandise, for any money advanced or negotiable instrument or other obligation in writing given by such other person' on the faith thereof." There is nothing in this section which, in my judgment, countenances the idea that a factor can misapply the property intrusted to his possession, and confer on a party who is privy to such misapplication, a right by purchase or pledge, superior to the rights of the true owner. As a general rule, the rightful owner of property is entitled to recover it from any person in whose possession it may be, whether obtained by the latter under color of purchase or otherwise. This, strictly applied, was calculated to lead to embarrassments, and fetter commercial dealings. Possession is *prima facie* evidence of title; and when goods are intrusted by the real owner with an agent for the purposes of sale or security, it is consistent with justice and equitable principles that a party should be protected who, on the faith of such possession, makes a purchase of the goods or an advance or loan thereon. It was doubtless with a view to this salutary object, that the statutory provision above recited was made. It certainly could not have been the intention of the legislature to divest the actual owner of his property in cases where a party dealing with an agent, in fraud of the rights of his principal, acquires the possession. Even in the case of negotiable paper, where possession is evidence of ownership, it is held that a transfer, in derogation of the right of the true owner, is unavailable unless it is received fairly and *bona fide*, in the usual course of business, and for a valuable consideration. (*Stalker* v. *McDonald*, 6 *Hill*, 93.) The statute was designed to facilitate commercial transactions, by protecting persons trading · and transacting business with agents in the fair and ordinary course of business, but not to legalize a fraudulent violation of duty. Indeed if the same rule of construction were to be applied to our statute, which has prevailed in England, in reference to

their law above referred to, it may be questionable whether a factor intrusted with the possession of merchandise for the purpose of sale only, but not having the documentary evidence of title, can make a valid pledge. The possession of the evidences of title therein specified appears to be sufficient to warrant either a purchase or an advance; but when the dealing is based on the possession of the goods only, it is not clear that the same rule would be applicable. (*See Russell on Factors and Agents*, 125.)

If we look at the occasion and the history of the passage of the law of 1830, I think the legislature will not. be considered chargeable with the injustice of declaring that an agent, by a breach of duty and in violation of good faith, can confer on a privy to the fraudulent transaction a right to the property of his principal paramount to that of the owner himself. It was passed on the petition of sundry merchants and others in the city of New-York, representing that the rule of the commercial law invalidating all pledges by factors of the goods or property of their principals, " even where the lender advanced his money in ignorance that the goods were held on consignment," was in their opinion unjust and impolitic; and in urging the propriety of its passage they expressly disclaim the wish of protecting agents in the misapplication of goods intrusted to them, and suggest a penal remedy to prevent it. A report was made fa vorable to the general objects contemplated by the petitioners, but not, in my opinion, affording any pretext of right in the factor to deal with the property intrusted to him as his own absolutely. (*See Senate Doc. of* 1830, *vol.* 1, *Nos.* 46 *and* 55.) The legislature, by § 7 of the act in question, made it a misdemeanor not only in a factor or agent to apply to his own use goods and merchandise intrusted to him, but also in every person conniving with, or aiding or assisting him in such fraudulent misapplication.

I think it clear, therefore, that it was not their intention by the third section above cited, to legalize what is, by the seventh, declared to be a misdemeanor punishable by fine and imprisonment. Full effect and operation can be given to the law and to

the terms, " on the faith thereof," particularly relied on by the plaintiff in error, by protecting those who *bona fide* contract with a factor or agent, as owner, on the faith of the possession of the goods intrusted to him, or the documentary evidence of the title thereto specified in the act. Such a construction will, I am satisfied, carry out all the objects contemplated by the lawmakers at the time of its passage. If it is not sufficiently comprehensive, it is the province of the legislature to apply the remedy, as was done in England by the act of 1842 ; (5 *&* 6 *Vict. c.* 39 ;) but the courts cannot extend its provisions.

Entertaining these views, I am of opinion that the judgment of the supreme court should be affirmed.

JOHNSON, Senator. It is unnecessary to consider the matters of fact submitted by the judge to the jury. In point of law he instructed them " that the case involved questions as to the pow er of the factor under existing laws, over the goods of his principal. That the goods in question were sent by the plaintiffs to Charles Colgate, the factor, for sale, and to account for the proceeds ; and that the same were placed by Colgate in the hands of the defendant for sale, who made advances to him, Colgate, upon them. That under the former laws, the factor could not mortgage or pledge his principal's goods for advances to him upon them. But that the statute of 1830, had in some respects changed the rule ; that by the third section of that statute, a factor intrusted with the possession of merchandise for the purpose of sale, is deemed to be the true owner thereof, so far as to give validity to contracts made by him with other persons for the sale or disposition of such merchandise, for money advanced, or negotiable instruments, or other obligations in writing, given by such person on the faith thereof. And that by another section of the act, a person who accepts or takes any merchandise in deposit from such factor, as a security for an antecedent debt, acquires thereby, and may enforce no other or greater right or interest in such merchandise, than the factor had therein, or might enforce at the time of such deposit. That these provisions of the statute did not authorize or empower the factor to pledge

deposit or place the goods of his principal, in which he has no right or interest of his own, with a person who knew him to hold and possess the goods as factor, and not as owner, for advances made by such person to him for his use, upon the same. And that the statute did not enable or entitle him with whom such goods are under such circumstances pledged, deposited, or placed by a factor having a right or interest in them, for advances thereon, or otherwise, to retain the same against the principal for any advances to the factor, to any amount beyond the right or interest of the factor therein." By reference to the third and fourth sections of the act of 1830, it will be seen that the persons mentioned, who may deal with the factor or agent, are entirely different. The third section speaks of contracts made by such agent with any other person for the sale or disposition of the whole or any part of the merchandise, while the fourth section mentions such persons as may accept or take such merchandise *in deposit* from the agent. The allusion, therefore, to the fourth section, by the learned judge who tried the cause, was wholly unnecessary for the purpose of determining the true situation of the goods in this case. The defendant was not a depositary of the merchandise. He received it of Colgate, the factor, to sell, and to hold it as an indemnity for advances to be made. Equally wrong was the charge of the judge to the jury, " that the statute does not enable or entitle the person with whom the goods are, under such circumstances, pledged, &c. by a factor having a right or interest in them, to retain the same against the principal for any advances to the factor, to any amount beyond the right or interest of the factor therein," unless the construction given to that section by the supreme court be correct. That court, speaking of the language of the third section, declare that " in strict grammatical construction, the words ' on the faith thereof,' may refer to ' merchandise' as the last antecedent; but in point of good sense, as well as good morals, the reference is to the words ' shall be decreed to be the true owner thereof.' The obvious meaning is, that the factor or other agent, who has been intrusted with certain documentary evidence of title, or with the possession and ostensible own-

ership of the property, shall be deemed the true owner, so far as shall be necessary to protect those who have dealt with him ' upon the faith thereof ;' that is, upon the faith induced by the usual *indicia* of title, that he was the true owner of the property." I apprehend the ingenious construction given to the words " on the faith thereof," by the learned justice who gave the opinion of the supreme court, cannot, without doing violence to the English language, and without a wide departure from the intention of the legislature, be maintained. The very object of the statute was to change the common law rule in relation to the rights of those dealing with factors and agents. This is apparent, upon referring to the petition to the legislature upon this subject. (*Senate Doc. for* 1830, *vol.* 1, *No.* 46.) The report of the committee at some length reviews the common law rule, designating its objects, and adverts to the " factors' " act, (6 *Geo.* 4, *ch.* 94,) to show that even in England a great change from the old rule had been made. The remonstrance presented from the city of Albany by a numerous and respectable class of mer chants, particularly pointed out the third section of the bill re- ported by the committee, as highly objectionable. " The third section of the bill," say these remonstrants, " will make the na- ked possession of a bill of lading, custom-house permit, or ware- house-keeper's receipt for goods, evidence of actual ownership in the possessor, so as to authorize him to dispose thereof to his own use, even in case he obtains such possession feloniously or by fraudulent means, without the knowledge or consent of the person to whom they belong." (*Doc. No.* 105.) It cannot be said, but that the committee which reported the bill, and the legislature which passed it, had before them the British act, and the opinion of eminent merchants as to the effect of this third section. Surely, if the legislature had intended to have saved the rights of the real owner, when the person contracting with the factor should know that he was not the true owner, it was most unfortunate in the selection of words to convey that idea. If the committee were at a loss what words to use in such a case, and were desirous of effecting the change which the British act had made, they could have copied the proviso used in the second

section of that statute, especially as they had adopted its phraseology in most other respects. The second section of the act of 6 *Geo.* 4, *ch.* 94, reads as follows: "All persons intrusted with the possession of bills of lading, India warrants, dock warrants, warehouse-keepers' certificates, wharfingers' certificates, and warrants or orders for the delivery of goods, shall be deemed to be the true owners of the goods, so far as to give validity to contracts for the sale or disposition of such goods, *or for the deposit or pledge thereof*, upon the faith of such several documents; *provided* that the parties have no notice that the persons so intrusted are not the true owners." It will be seen that this section does not include persons intrusted with the possession of goods or merchandise for the purpose of sale, but confines its operation to those having the documentary evidence of title. The faith, therefore, of the person who contracts with the factor is predicated only upon the several documents. Can there be a doubt then, but our legislature intended such *faith* to apply not only to the documentary evidence of title, but to the goods or merchandise in possession of the factor for the purpose of sale, or as a security for advances? Comparing these two acts, the English and our own, and I apprehend that the words "upon the faith thereof" can apply to no other antecedent than "merchandise." Mr. Justice Bronson, in his opinion, thought the legislature could not have intended to enable the factor to commit a fraud upon his principal, by obtaining advances upon the goods for his own purposes, where the person making the advances knew that he was not dealing with the true owner. It is true, the legislature, especially by the seventh section, provided for the fraudulent conduct of the factor or agent, and those conspiring with him to commit such fraud. They, however, by omitting a provision for the punishment of the factor in a case like the one under consideration, saw fit not to classify it among the fraudulent acts of the agent, but intended it as the subject of contract between him and the principal. If the factor, contrary to instructions, places the goods intrusted to him in the hands of a third person for sale, and obtains advances on them, he is left to be dealt with by the principal in the same manner he

would be in case he had sold the goods himself, and misappro-priated the money.   In point of principle there is no difference: and unless the legislature intended to punish in case of a mis-application of money, there was no reason for a provision against conduct like that in the case under consideration.   It is not ev-ery breach of trust that is treated as fraudulent.   It may be a question in morals as well as in commercial transactions, which is the wisest policy—to suffer the principal to rely upon the in-tegrity of his agent alone in a matter of contract, or to protect the interest of those dealing with such agents, who claim to have authority for their acts.   However, it is apprehended courts have no authority to settle the moral intentions of legislators in the passage of acts, but it is their duty to carry into effect the laws as framed.   Questions of morality as well as of policy, are questions about which men are very likely to differ.   Believing that both the superior and supreme courts have given a wrong construction to the act of 1830, I shall vote for a reversal of the judgments.   The plaintiff in error is entitled to have the pos-session of 'the goods until his advances, made upon the faith thereof, and his legal charges are paid.

BARLOW, PORTER, SPENCER and WRIGHT, Senators, also delivered written opinions in favor of affirming the judgment, upon the same grounds, in substance, which are relied upon in the opinion given in the supreme court.

Upon the question being put, ".Shall this judgment be re-versed?" all the members of the court present who had heard the argument, except Senator JOHNSON, to wit: The PRESIDENT, The CHANCELLOR, and Senators BARLOW, BEERS, BURNHAM, EMMONS, FOLSOM, HAND, HARD, LESTER, LOTT, MITCHELL, PORTER, SANFORD, SCOVIL, J. B. SMITH, S. SMITH, SPEN-CER, WHEELER, WILLIAMS and WRIGHT, (21,) voted for af-firmance.

                              Judgment affirmed.