Monell, J.,
(dissenting.) The learned Justice before whom this action was tried, following, but not distinguishing it from Bonito v. Mosquera, (2 Bosw., 401,) withdrew from the consideration of the Jury the question whether Starling, McOulloh and Company were intrusted with the “ possession ” of the goods for the purpose of sale, so as to give validity to any contract they might make respecting them. He instructed the Jury that S., McO. & Co. did not hold and transfer to the defendants such a “ possession ” of the property as would enable them to defend under the possession clause in the factors’ act.
In June and July, 1857, the plaintiff purchased at Chicago, large quantities of corn, which was shipped to Hew York, consigned to S., McO. & Co., (who were commission merchants,) received by them and stored in their names in warehouses in Brooklyn. The instruction to the consignees was not to sell, but to put in store. The warehouse receipts were in the narnts of S., McO. & Co., the plaintiff’s name nowhere appearing upon them. When the defendants advanced on the corn, the warehouse receipts were transferred to them. In Bonito v. Mosquera, the ceroons of quina were never in the actual possession of Mosquera & Co. The goods, on arrival, had been placed in a bonded warehouse, where they were held subject to the payment of duties and warehouse charges. Mosquera & Co. had in possession the bills of lading and the custom, house permit, and nothing more. This was held a constructive possession merely, and not sufficient to give validity to contracts made by the consignees, in respect to the goods, under the “ possession ” clause in the *529 factors’ act. That case is distinguishable from the one now under consideration. In this case the corn was received by S., McO. & Go., the consignees; by them stored, and 'the receipts taken in their own names. It would be difficult to conceive of a more absolute and actual “ possession” than .these consignees had when tliéy took possession and placed the com in store. Nor can there be any doubt that such “possession ” of the com was, in the language of the act, “ intrusted ’’ to S., McC. & Go., for the purpose of sale. They were instructed not to sell the corn “ upon its arrival,” but to put it in good, dry, airy storage, and have it insured, and await further advices as to time of sale.
The case of Bonito v. Mosquera cannot, therefore, be regarded as an authority sustaining that part of the charge of the learned Judge, in which he withheld the question of “ possession ” of the merchandise, from the Jury.
Since the trial of this action, this question has been authoritatively disposed of by the Court of Appeals in Cartwright v. Wilmerding, (24 N. Y. R., 521.) The facts were similar to those in Bonito v. Mosquera. The goods were in bond, and the consignees held the warehouse receipts. Those they delivered to the defendant upon receiving the advance. This was held to be a “ possession ” of the goods, within the meaning of the factors’ act. See, also, Woodruff v. Nashville R. R. Co., (2 Head, Tenn., 89.)
That part, therefore, of the charge of the Judge which excluded from the Jury the question whether the possession of the corn was intrusted to S., McO. & Co., was erroneous, and a new trial must be granted for that reason, unless we can see, that upon the whole case, as submitted to the Jury, the defendants have not been prejudiced, and that the result would not have been different had the Judge charged otherwise.
The third section of the act, known as the factors’ act, (Laws 1830, p. 203, 5th ed.; B. S., vol. 3, p. 76,) divides the evidences of title in the factor, so as to give validity to his contracts in respect to property consigned to him, into *530 two classes. First, where he is intrusted with the possession of documentary evidence of the title; and, second, where not having the documentary evidence, he is intrusted with the “ possession of the merchandise.” The documentary evidence is described to be a “ bill of lading, custom house permit, or warehouse keeper’s receipt.”
There was no question in the case but that Starling, Mc-Ctilloh & Co. were intrusted with the documentary evidence of title to the corn, at the time the defendants made the advances. They had received the#bills of lading, procured the storage and taken the “ warehouse keeper’s receipt ” in their own name, and this receipt was transferred to the defendants.
There was no doubt, and there can be no doubt, that with this documentary evidence of title in their possession, Starling, McOulloh & Co. were to be deemed the true owners of the corn, so far as to give validity to the contract by which they pledged it to the defendants, for the advances made by them, if such advances were made by the defendants upon the faith of such ownership.
It being clear and undisputed, then, that the factors possessed the necessary documentary evidence in this case, so that they were to be deemed the true owners, and the validity of any contract made by them upon the faith thereof, and the consequences of bad faith in dealing with the consignees being the same, whether they held the documentary evidence, or had the possession of the merchandise, the exclusion of the latter question from the Jury could not, in my judgment, prejudice the defendants or affect the result. Had there not been any complete documentary evidence of title, then the withdrawal of the other question would undoubtedly have prejudiced the defendants. Whether having the documentary evidence or the possession, the protection to the defendants was, that they had made the advances upon the faith of the consignee’s title; and it was quite immaterial whether the evidence of such title was the “ warehouse keeper’s receipt” or the “possession” of the merchandise.
*531 I see no reason, therefore, for granting a new trial because of the error of the Judge in withholding the question of “possession” of the goods from the Jury.
The only other part of the charge to which an exception was taken, was to the instruction “ that if the facts and “ circumstances attending the transactions were such as “ would have caused a man of ordinary prudence and cau- “ tion to believe that Starling, McOulloh & Oo. were not “ the owners, and thus have put him on his guard, the “ Jury might find notice on that ground.”
The construction put by the learned Judge upon that part of the factors’ act which protects persons dealing with the factor “ upon the faith thereof,” as I understand from his charge, is, that if the defendants had notice that Starling, McOulloh & Oo. were nob the owners of the corn, they could not hold the corn pledged them under such circumstances; that the words “ upon the faith thereof ” refer to the title of the factor, and not to the merchandise; that the “faith” which is to be exercised by a person dealing with the factor, is in his being the “owner” of the goods. Hence, the Judge instructed the Jury that if the defendants had notice that Starling, McOulloh fa Oo. were not the owners, the defendants must fail. My brethern suppose that upon the “faith thereof” refer to the “ merchandise,” and not to the ownership. That cannot be so. In protecting innocent parties, the Legislature must have intended to protect against the claim or title of other persons. They invest factors with certain indicia of title, which they declare shall shield persons dealing with them who so deal upon the faith thereof. Faith, or belief, which is its equivalent and synonymous term, requires the assent of the mind to the truth of what is declared by another; if there is no such belief, there can be no faith. The declaration made by Starling, McOulloh & Co., holding the documentary evidence, or the “possession of the merchandise” was, we are the owners; and it was upon the belief in the truth of that declaration, expressed by their acts, that the defend *532 ants were supposed to have made the advances. If it was not designed to protect innocent persons, who, believing they were treating with the owner and not with the mere agent, in good faith part with their money upon evidences of title which the law declares sufficient, and in which they had “ faith,” the factors’ act would be of no avail. It is the undisturbable title they get, if they have faith that they get it, which makes the factors’ act valuable. Any other construction would render it valueless.
As I read the decisions of our Courts, in which a construction of the act in question has been involved, they have uniformly held that “ upon the faith thereof,” has reference ko the title of the person holding the evidences of title; and that to constitute a dealing with a factor Iona fide, there must be not only an absence of all knowledge of the true owner, but “faith” created by the evidences of title, that the dealing was with the real owner.
In Stevens v. Wilson, (6 Hill, 512,) the factor was in “possession” of goods and advances were made to the factor, and the case turned upon a question of actual notice that the factor was not the owner. But Mr. Justice Bbonsob, ignoring what he says may be the grammatical construction of the words, adopts a construction more in accordance with good sense and sound morals, and declares that the reference of the words “ upon the faith thereof,” is to the words, “ shall be deemed to be the true owner thereof.”
This case afterwards came before the Court for the Correction of Errors, (3 Denio, 472,) where the Chancellor, delivering the opinion of the Court, says: “ It is perfectly “evident, from the whole of this section, (3d sec. of factors’ act,) taken in connection with the second section “ and the previous law upon the subject, that the words, “ ‘ on the faith thereof,' refer to the ownership of the goods, “so as to protect the purchaser or pledgee, who has “ advanced his money or given his negotiable note or “ acceptance, or other written obligation, upon'1 the faith “ or belief of the fact that the person with whom he dealt *533 “ was the real owner of the property. Any other con- “ struction of the statute would do great injustice to the “ Legislature who passed the act of 1830.’’
The judgment of the Supreme Court was affirmed by a vote of twenty-one to one.
This construction of the act was afterwards approved by the Court of Appeals, in Covell v. Hill, (2 Seld., 374, 380,) and again in Cartwright v. Wilmerding, (supra,) where the fact was found (p. 533) that the defendants made the advances “ on the faith that the goods in question were oivned by Acker & Harris, &c.”
The construction thus given to the act in question, by the highest Courts of our State, is so consonant'with the good sense of the statute and manifest intention of the Legislature, that even if their decisions were not controlling they would still commend themselves to my judgment.
It was not doubted on the trial, by the defendants’ counsel, nor was it upon the argument of this appeal, that “actual notice” to the defendants, that Starling, McGulloh & Co. were not the owners of the corn, would defeat the claim of the defendants to hold it as against the true owners. The Judge so expressly charged the Jury, and no exception to it was taken by the defendants’ counsel.
But it is contended that nothing short of actual notice will or can disturb the defendants’ title or lien on the corn, acquired through their advances to Starling, McCulloh & Co. That notice cannot be implied nor inferred from facts and circumstances attending the transactions which were of such a character as would have caused a man of ordinary prudence to believe that Starling, McCulloh & Co. were not the owners.
The objection to this part of the charge was, not that such notice might not be implied from facts and circumstances, but that, “ apart from the actual notice asserted by McCulloh, there was no evidence of any such facts and circumstances as would warrant the Jury in finding notice.”
The question then is, could the Jury rightfully infer *534 from the facts and circumstances of the case, that the defendants had notice that Starling, McOulloh & Co. were not the owners of the corn, or must proof of actual notice be furnished of such fact to deprive the defendants of the ■ protection of the statute ?
That actual notice would produce such effect is abundantly supported by authority. (Stevens v. Wilson, Covill v. Hill, Bonito v. Mosquera, and Cartwright v. Wilmerding, supra.) In none of these cases, except Govill v. Hill, however, did it appear that the person dealing with the factor had other than actual notice. It was assumed or stated that he knew at the time, he was not dealing with the true owner. In the statement of the case in Stevens v. Wilson, in 6 Hill, it is said, “ evidence was given tending to show ” knowledge, &c. The nature of the evidence is not given. In Cartwright v. Wilmerding, there was a finding that the advances of the defendants were made in good faith, without notice of the true ownership; but the learned Judge who delivered the opinion of the Court of Appeals, significantly asks, “ were -these circumstances connected with the transaction which charge them in law with such notice ? ”
In Covill v. Hill, there was no evidence of actual notice, yet the Judge charged the Jury that if the defendants sold the property with knowledge that the plaintiff claimed to be the owner, it was a conversion. And the Court say, (p. 380,) speaking of the evidence tending to show notice, “ this was certainly enough to put them on inquiry, &c.” The language of the charge in the case under consideration was no stronger than that employed by the learned Judge in Covill v. Hill.
The rule which was adopted in England in Gill v. Cubitt, 3 Barn. & Cres., 466, and followed in Goodman v. Harvey, 4 Ad. & El., 870, that meie facts and circumstances which would excite the suspicion of a careful and prudent man, were not sufficient to destroy his title, as applied to commercial paper, seems to have been approved in this State, by a Court of concurrent jurisdiction with this Court. *535 (Hall v. Wilson, 16 Barb., 548; Magee v. Badger, 30 Id., 246.) The same rule is approved by the Supreme Court of the United States, (Goodman v. Simonds, 20 How. U. S. R., 367, 369,) and in many of the neighboring States. (See eases cited in 2 Parsons on Notes and Bills, 278.) I cannot discover that it has been adopted by the appellate Court of this State, nor that in any case has it been applied to any contracts, other than commercial paper; especially not to pledges of property by a factor.
The design of the factors’ act was to change the common law rule that a factor could not pledge the goods of his principal, and to declare that if he was intrusted with the indicia of title, he should be deemed the owner and might be dealt with accordingly. It only protects innocent persons, who deal in good faith, believing, from the evidences of title possessed by the factor, that he is the owner. It does'not protect such as had knowledge or the means of knowing that the factor was not the owner. Before the factors’ act, a person ..dealing with a factor or broker, was bound to know that, by law, a factor or broker, although a general agent, was not clothed with authority to pledge, deposit or transfer the property of his principal for his own debt. And the factors’ act, while it protects an innocent person, does not relieve one who has knowledge of the agency. It seems to me, that whatever he was bound to know before the act, he may now acquire by actual notice or from circumstances tending to inform him of the mere agency of the persons with whom he is dealing ; and, therefore, as respects the good faith of advances made to a factor, it is proper to infer, from such facts and circumstances as would put a careful and prudent man on inquiry, that he had notice.
In Ware v. Egmont, (31 Eng. L. & E., 89), where it was sought to affect a purchaser of real estate with constructive notice, the Oourt say, (p. 97,) “ where he has not “ actual notice, he ought not to be treated as if he had “ notice, unless the circumstances are such as. enable the “ Court to say, not only that he might have acquired, but *536 “ also, that he ought to have acquired the notice with “ which it is sought to affect him ; that he would have “ acquired it but for his gross negligence in the conduct of “ the business in question.”
Parsons, speaking of notice as applied to contracts generally, (2 Pars, on Oou., 184,) says, constructive notice may be of two kinds. “ In one, some notice or knowledge of a “fact is proved, which would imply to a reasonable man cer- “ tain other facts, or would lead a person of ordinary cau- “ tion into an inquiry which would certainly disclose those “ facts. The other exists when actual notice was attempt- “ ed, or when sufficient means of knowledge and notices “ of inquiry exist, and the Court are satisfied that the “ party has abstained from inquiry or avoided notice, with “ the intent of remaining in ignorance.”
In Williamson v. Brown, (15 N. Y. R., 354,) it was held, that, whpre a purchaser of real estate has knowledge of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to acquire, he is presumed to have made the inquiry, or is deemed to be guilty of such negligence as will defeat his claim to be considered a bona fide purchaser.
The law applicable to commercial paper is sui generis, and is seldom extended to other contracts; and until I can find authority for it, I shall not apply the modern rule of law on the subject of constructive notice as respects the bonafides of a holder of commercial paper, to the good or bad faith of person dealing with other property.
There was no error, therefore, in submitting to the Jury the question of implied notice derivable from the facts and circumstances attending the transaction ; nor in charging that if, from such facts and circumstances, the Jury found such notice, the defendants were not protected by the act. That there was some evidence on this subject proper for the consideration of the Jury, appears from the case, among others, that Starling, McOulloh & Co. were commission merchants, selling the property of other persons.' *537 The Jury having found such notice, their verdict should not he disturbed.
The other exceptions taken on the trial were abandoned in the argument of the appeal.
Upon principle, therefore, as well as upon undoubted authority, I think the judgment should be affirmed. Judgment reversed, and a new trial ordered.