WILLIAM BATES and HUGH M. COMER, Respondents, *v.* JAMES B. CUNNINGHAM, Impleaded with FRANCIS R. MATHER, Appellant.

*Conditional sale — when title passes — Factor's act — chap.* 179 of 1830 — *Construction of.*

On the 10th and 15th of November, 1870, the plaintiffs sold and delivered, at Savannah, Georgia, 115 bales of cotton to one Williams, who paid $1,000 of the purchase-price and gave his check for the balance, $2,676.20, which was never paid. By the terms of the sale the title was not to pass to Williams until the price was paid. On November seventeenth, Williams shipped in his own name sixty bales of the cotton to New York, consigned to the defendants, and drew a draft for $4,500 upon them, to which he attached the bill of lading and invoice, indorsed by him, and procured it to be discounted by Bryant & Hunter, of Savannah, to whose order the draft was made. The defendants subsequently accepted the consignment and paid the draft in good faith, and with no notice of plaintiffs' title.

In an action of replevin brought by the plaintiffs to recover the cotton from the defendants, *held*, that although as against Williams the title to the cotton remained in the plaintiffs, yet that the defendants were protected from all claims on their part by virtue of the provisions of the factor's act. (Chap. 179 of 1830.)

The farthest that the courts have gone in creating exceptions to that statute, is to hold that, where goods have been shipped in the name of a person who has obtained possession of them by theft, or by trespass, without any act or concurrence on the part of the owner by means of which the shipper was enabled to obtain the possession and the *indicia* of ownership, that then the case is not within the protection of the statute. (Per Davis, P. J.)

Appeal from a judgment in favor of the plaintiffs, entered upon the verdict of a jury, and also from an order denying a motion for a new trial, made upon the minutes of the court.

*Benjamin G. Hitchings,* for the appellant. The Georgia statute has no force out of that State, and the courts of this State will not, upon principles of comity, give effect to it as against the rights and claims of our own citizens, and in opposition to our own laws. (*Hoyt* v. *Thompson,* 5 N. Y. [1 Seld.], 320; *Lemmon* v. *The People,* 20 N. Y., 562; 2 Kent's Com. [6th ed.], 406; Wharton's Conflict of Laws, §§ 335, 347, 348a, 349, 350, 351; *Abrahams* v. *Plestero,* 3

Wend., 551; *Hoyt* v. *Thompson*, 23 Wend., 89; *De Witt* v. *Barnet*, 3 Barb., 89.) This principle has been applied in a multitude of cases and to various subjects, but principally to cases where claims to property have been set up under the special laws of some other State or country against persons claiming under the laws of the State where the action is brought and the property is situated. The owner of a slave who had taken him into a State where slavery was not recognized, could not hold him. (*Lemmon* v. *The People*, 20 N. Y., 562.) Claims to property under the insolvent or bankrupt laws of another State or country are not recognized in our courts. (*Abrahams* v. *Plestero*, 3 Wend., 551; *Hoyt* v. *Thompson*, 1 Seld., 320; *Harrison* v. *Story*, 5 Cranch, 298, 302; *Ogden* v. *Sanders*, 12 Wheat., 361; *Baker* v. *Wheaton*, 5 Mass., 509.) Voluntary assignments, good by the laws of the State where the debtor resides and where made, are not recognized as giving title to property in another State, unless valid by the laws of that State. (*Johnson* v. *Parker*, 4 Bush [Ky.], 149; *Rice* v. *Danenbaum*, 32 Vt., 460; 17 Pick., 11; 50 Penn., 230.) Statutory liens upon personal property created by or under the laws of one State will not be enforced in another State into which the property has been taken. (*De Witt* v. *Barnett*, 3 Barb., 89; *Donald* v. *Hewell*. 33 Ala., 534; *Marsh's Admr.* v. *Elsworth*, 37 id., 85; *Booth* v. *Clark*, 17 How. [U. S.], 322; 1 Gray, 243.) Even with the aid of the Georgia statute, the plaintiffs are not entitled to recover in this action. (*Rawles* v. *Deshler*, 3 Keyes, 572; *Dows* v. *Green*, 24 N. Y., 638; *Cartwright* v. *Wilmerding*, 24 id., 521; *Smith* v. *Lynes*, 1 Seld., 41; *Lickbarrow* v. *Mason*, 6 East, 21; 2 T. R., 63; *Parker* v. *Patrick*, 5 id., 173; *Pickering* v. *Bask*, 15 East, 38; Chitty on Contracts [10th ed.], 430, and note; *Williams* v. *Tilt*, 36 N. Y., 319; *Peabody* v. *Fenton*, 3 Barb. Ch., 463; *Mowry* v. *Walsh*, 8 Cow., 238; *Lewis* v. *Palmer and Hart*, Denio & Hill's Sup., 68.) It is the settled rule of law, and has been since the case of *Lickbarrow* v. *Mason* (2 T. R., 63), that a consignee who advances upon a bill of lading in his favor, or indorsed to him, can hold the goods against an unpaid vendor. Upon the same principle it is entirely settled that a *bona fide* purchaser from a fraudulent vendee can hold goods against the vendor. (*Dows* v. *Green*, 24 N. Y., 638; *Mowny* v. *Walsh*, 8 Cow., 238.) Upon

precisely the same principle, a *bona fide* purchaser from the vendee, *upon a conditional sale and delivery*, can hold the goods against the original owner. (*Smith* v. *Lynes*, 1 Seld., 41; *Haggerty* v. *Palmer*, 6 Johns. Ch., 437; 1 Paige, 312; 1 Edw. Ch., 146; *Caldwell* v. *Bartlett*, 3 Duer, 341, 352.)

*Erastus Cooke*, for the respondents.

DAVIS, P. J.:

This action was brought to recover possession of forty-five bales of cotton, alleged to be the property of the plaintiff, and wrongfully detained by the defendants. It arises upon the following facts: Bates & Comer were commission merchants and cotton factors, in the city of Savannah, in the State of Georgia. On the 10th and 15th of November 1870, they sold to one S. F. Williams, at Savannah, 117 bales of cotton, of which the forty-five bales in question were part. Williams paid on the purchase-price $6,000, leaving unpaid $2,676.20, for which amount he gave his check, which was afterwards dishonored, and never paid. The cotton was delivered to, and taken possession of, by Williams, "with the understanding" (as testified to by one of the plaintiffs) "that it should be fully paid before it was disposed of by him; that is, that the cotton was sold for cash on delivery." On the 17th of November, 1870, Williams shipped sixty bales of the cotton by steamer to New York, consigned to J. B. Cunningham & Co., the defendants' firm. The bill of lading of such shipment was taken by Williams, in his own name, and he drew his bill of exchange on the defendants' firm for $4,500, dated November 17, 1870, payable at sight, to the order of Messrs. Bryan & Hunter, and indorsed and delivered to Bryan & Hunter, who were bankers at Savannah, the bill of lading accompanied with such bill of exchange, together with an invoice of the sixty bales of cotton, describing them as shipped by S. F. Williams, by steamer San Salvador, to defendants' firm at New York city, to be sold on account of the shipper. The bill of lading and the invoice were annexed to the bill of exchange, and indorsed by Messrs. Bryan & Hunter, to Henry Talmage, New York, and forwarded to him for acceptance and collection. The defendants' firm accepted and paid the bill of exchange and received the same from Talmadge, with

the bill of lading and invoice. They received the goods on their arrival at the city of New York in good faith, and without any notice, or knowledge of the plaintiffs' claim for part of the unpaid purchase-price. The plaintiff put in evidence a statute of Georgia, which is as follows : "Cotton, corn, rice and other products sold by planters and commission merchants on cash sale, shall not be considered as the property of the buyer, or the ownership given up, until the same shall be fully paid for, although it may have been delivered into the possession of the buyer." Upon these facts and upon the finding of the jury, there can be no doubt that the sale made by plaintiff was a conditional one, and that, as between them and Williams, they were owners of the cotton or its proceeds until the payment of the whole purchase-price. The delivery of the possession was subject to that condition, and these facts entitled the plaintiffs to pursue the cotton and recover possession thereof in the hands of the defendants' firm, unless some other rights intervene for their protection. The statute of Georgia, does not strengthen the rights of the plaintiffs in this respect ; because, at common-law as established in this State, their title to the property would remain good as against Williams, until the condition of payment was performed, and because the statute does not operate extra territorially, so as to limit or affect the operation of our own statutes. The case, therefore, turns, as we think, altogether upon the application of the statute of this State, generally known as the factor's act. (Laws of 1830, chap. 179 ; 2 R. S. [6th ed.], 1168.)

That act provides that "every person in whose name any merchandise shall be shipped, shall be deemed the true owner thereof so far as to entitle the consignee of such merchandise to a lien thereon ; first, for any money advanced or negotiable security given by such consignee to or for the use of the person in whose name such shipment shall have been made ; second, for any money or negotiable security received by the person in whose name such shipment shall have been made, to or for the use of such consignee." And the second section of the act declares that "the lien provided for in the preceding section, shall not exist where such consignee shall have notice, by the bill of lading or otherwise, at or before the advancing of any money or security by him, or at or before the receiving of such money or security by the person in whose name the shipment shall have

been made, that such person is not the actual and *bona fide* owner thereof."

There is no question in this case but that the cotton was shipped to the defendants' firm by Williams, in his own name, by bill of lading in due form, accompanied by an invoice, in the name of Williams, as owner, and by his draft for the amount, which the defendants' firm have advanced, nor is there any question but that the advances were made upon presentation and delivery of the bill of exchange, accompanied by the bill of lading and invoice and in entire good faith by the defendants. Nor is there any pretense that the defendants' firm had notice by the bill of lading or otherwise, at or before advancing their moneys upon such bill of exchange, that Williams was not the actual owner of the cotton.

If, upon such a state of facts, the case is not within the factor's act, then the act is of no value or benefit to the commercial dealings of the country, and ought to be swept from the statute-book.

The first section of the act declares, in the simplest possible language, that every person in whose name any merchandise shall be shipped, shall be *deemed the true owner thereof* so far as to entitle the consignee to protect himself by a lien for his advances. The only exception made by the statute to the language used in the first section, is that contained in section 6, of the act, which is in these words : " Nothing contained in this act shall authorize a common carrier, warehouse-keeper or other person to whom merchandise or other property may be committed for transportation or storage only, to sell or hypothecate the same." The exception created by this section very clearly has no application to the present case. The cotton was not " *committed for transportation or storage only* " to Williams, either as common carrier, warehouse-keeper, or in any other capacity, but simply as a purchaser, having a right to perfect his title by payment of an unpaid balance of the purchase-price. It is supposed that the courts by their decisions construing the factor's act, have interpolated language which makes it apply only to cases in which the owner of property has shipped the same in the name of another. If the courts had attempted this, the effect, if any could follow from that kind of judicial legislation, would be to render the act itself merely declaratory of existing law, because there can be no doubt that under the common law an owner who shipped

his property in the name of another person, would not be heard to assert any title, as against a lien acquired by the consignee by advances made in good faith to that person upon such a shipping bill. The owner's act would in such case be a complete estoppel *in pais* for the protection of the dealer in good faith. The farthest that the courts by their decisions can justly be said to have gone, is to hold that where goods have been shipped in the name of a person who has obtained possession of them by theft, or by trespass without any act or concurrence on the part of the owner by means of which the shipper has been permitted to obtain such possession and the *indicia* of ownership, the case is not within the protection of the statute. *Saltus* v. *Everett* (20 Wend., 267) arose before the statute, and in that case the true owner was permitted to follow his goods as against the title derived through a thief or trespasser. The factor's act was not retroactive and had of course no application to the case.

*Stevens* v. *Wilson* (3 Denio, 472) is a case where a factor pledged the goods of his principal for his own benefit to a pledgee who knew that the factor was not the owner. Of course that case has nothing to do with any question under the first section of the factor's act.

*Covell* v. *Hill* (4 Denio, 323, and 2 Selden, 374), is a case where one Potter made a conditional contract for the purchase of lumber from the plaintiff, by which it was agreed that Potter should ship the same, in the name of the plaintiff, to the defendants, and pay the freight, and that the lumber should be sold by the defendants, as the property of the plaintiff, and the avails thereof accounted for and paid over to the plaintiff. Potter shipped the lumber by canal boat, and received from the master of the boat a bill of lading *in the name of the plaintiff as the owner*, which bill was delivered to the plaintiff and retained by him. Potter gave to the master of the boat a paper in these words: "Elmira, July 2, 1842, shipped on boat Occidental H. Banks, 5,290 feet white pine boards and plank for Albany. (Signed) A. F. Potter."

No bill of lading was sent to the defendants, but Potter gave the master of the boat an order on the consignee for the balance of freight on the lumber which the consignees paid. The consignees also advanced to Potter $250 on the lumber, and claimed to hold the same against the plaintiff Covel for the freight paid, the advances, and a considerable previous indebtedness of Potter to

them. The plaintiff offered to pay the freight and other charges, and demanded the lumber. The consignee refused to deliver the same. The courts held that so far as the case was governed by the principles of the common law it was clear that the plaintiff was entitled to recover. They also held that the lumber was not shipped in the name of Potter but of the plaintiff, in whose name the bill of lading was made out, and that the instrument sent by the captain of the boat was not a bill of lading, nor did it possess the transferable quality of a bill of lading; and it was further held by the Court of Appeals, that the case was not within the first section of the factor's act, "because the lumber was not shipped in the name of Potter, the regular bill of lading being made out to the order of Covell, the plaintiff, and the defendant also had notice of the true owner-ship of the lumber." There was, therefore, no occasion in that case for the construction of the first section of the factor's act; but the Supreme Court, in commenting on that section, uses language which, it is supposed, establishes that the act is not applicable to the case at bar. It was said by BRONSON, C. J., after stating the language of the section, "although the words of the section are very broad, it must, I think, be confined to cases where the goods have been shipped by the owner or under his authority, in the name of another. It could not have been the intention of the legislature that one who has taken the property as a trespasser or a thief, and shipped it in his own name, should be deemed the true owner, so as to give the consignee a lien for advances. The leading object of the statute was to protect the consignee, when he had, in good faith, paid or become liable to pay money on the credit of appearances created by the owner of the property." And again, speaking of the common law as applicable to the case, he says, "But in the case of a conditional sale with a delivery of possession, it may be that a *bona fide* purchaser who parts with his money, or one who makes advances, to the vendee, on the property, trusting to the credit of appearances, will obtain a good title or lien; on the principle which is sometime applied, that when one of two innocent persons must suffer from the fraud of the third, the loss shall fall on him who has enabled such third person to do the wrong. But it is not now necessary to decide that question for there was no *conditional sale nor a sale of any kind from the plaintiff to Potter.*"

These quotations seem to show quite clearly that the learned judge did not intend to pass upon a case like the present; and that when he said " although the words of the section are very broad, it must, I think, be confined to cases where the goods have been shipped by the owner or under his authority in the name of another," the learned judge did not intend, we think, to declare that such authority must be any thing more than an *apparent* one, for he immediately proceeds to include within the objects of the statute a case " where a consignee, in good faith, has paid or become liable to pay money on the *credit of appearances created by the owner of the property.*"

In the present state of our law it is, probably, not true that in the case of a conditional sale with a delivery of possession, a *bona fide* purchaser, who parts with his money, trusting to the credit of appearances, will obtain a good title or lien, on the principle that where one of two innocent persons must suffer loss from the act of a third person, such loss shall be borne by him who has placed such person in the position which enabled him to do the act causing the loss. But it seems to us very clear that that is the vital principle which the legislature intended to incorporate in and express by the factor's act. In the case at bar, by the delivery of possession upon their conditional sale to Williams, the plaintiffs clothed him with the apparent authority, and all the *indicia* of ownership, which arise out of actual possession. The shipment of the cotton in his name as owner, the receiving of the bill of lading made in his name, the negotiation of the bill of exchange drawn on the consignees, and the presentation of that instrument and the acceptance and payment of the bill by the defendant's firm, were all harmonious in every respect with the apparent authority given to Williams by the contract of sale and delivery of possession made to him by plaintiffs, and each one of them would have been a perfectly valid and effective act for all purposes, but for the failure of Williams to perform the condition of the sale, which was wholly *latent* as to the defendants. It is a case, therefore, where the plaintiffs had armed Williams, by their own voluntary act, with means to commit the fraud upon innocent third persons, in a form that bore every appearance of regular and actual ownership by enabling him to ship the cotton in his own name and send forward the bill of lading upon which inno-

cent consignees paid their money; and this fact, unless the factor's act is to be abrogated by the decisions of courts, fully protects the defendants in their advancements upon the bill of exchange and bill of lading.

In *Cartwright* v. *Wilmerding* (24 N. Y., 521) the court say, speaking of the factor's act, " The act was intended to modify and make certain, in its practical application to the current transactions of trade and commerce, the general common-law rule, that where one of two innocent persons must suffer loss from the act of a third person the loss shall be borne by him who has placed the person in the position which enabled him to do the act causing the loss." And in commenting upon *Stevens* v. *Wilson* and *Covell* v. *Hill* (*ubi supra*), the learned judge who pronounced the opinion says : " In both the pledgee had actual notice that the pledgor was not the owner."

In *Rawls* v. *Deshler* (3 Keyes, 572) the defendants gave one Griffin an order on an elevator company for a quantity of corn, to be delivered " subject to my order until paid for." Griffin took possession of and shipped the corn and took a bill of lading in his own name. He then drew on the plaintiffs, the consignees in the bill of lading, and procured his draft to be discounted by a bank at Buffalo, who forwarded the same, with the bill of lading, to the plaintiffs, by whom the same were received and the draft paid. Griffin failed to pay the defendant, and the defendant got possession of the corn in *transitu*. The consignees brought replevin and recovered the corn. The Court of Appeals affirmed the judgment. In that case both the property and the right of control of the corn were to remain in the defendant until paid for.

In the later cases, to wit : *The Mechanics and Traders' Bank* v. *Farmers and Mechanics' Bank* (60 N. Y., 40), *Howland* v. *Woodruff* (id., 74), and *The First National Bank of Toledo* v. *Shaw* (61 N. Y., 283) we see nothing which, of necessity, compels us to hold that the factor's act is not a protection to the defendants in this case. An analysis of those cases only tends to leave in doubt what construction of the factor's act the Court of Appeals will ultimately adopt. It is enough to say that they do not hold that the first section of the factor's act is not applicable to such a state of facts as clearly exist in this case. The demands of commerce plainly

require that the first section of that act should be construed according to the plain signification of its language and the manifest purpose of the legislature.    The exceptions of the sixth section strongly fortify this construction, for where the legislature specify exceptions to a general provision of the same statute in which the exceptions are named, the expression of things excepted, is the exclusion of things not excepted.    The courts may be justified in holding that the act does not embrace the shipment of stolen goods, but certainly not, in excluding cases where the voluntary action of an owner has enabled a party, to whom possession has been delivered, to do the very acts upon which the statute declares "*he shall be deemed the owner*" for the protection of innocent parties.

We are unable to see any good reason for denying that the defendants in this case are within the protection of the statute.    The verdict should have been directed in their favor.

The judgment must, therefore, be reversed and a new trial ordered, with costs to abide event.


DANIELS, J. :

The evidence showed that the cotton in dispute in this case was delivered by the plaintiffs to F. S. Williams at Savannah in Georgia, under a contract for its sale, by the terms of which the title was not to become vested until its purchase-price was paid, and that was the effect also of the transaction under the terms of a statute of that State applicable to it.    When Williams received the cotton and before he had wholly paid for it, he shipped it to New York, consigned by the bill of lading to his own order, and afterwards by an indorsement of the bill ordered it to be delivered to the defendant. On the day of the shipment and consignment of the cotton to them, he drew a sight draft upon them for the sum of $4,500, attached it to the bill of lading and procured the draft to be discounted.    The defendants were notified of the transaction, accepted the consignment, and on the 21st of November, 1870, paid the draft upon the faith of it.    The cotton was afterwards demanded for the plaintiffs, because of the non payment of the unpaid balance of the purchase-price and upon the refusal of the defendants to deliver it, this action was brought for its recovery.    Upon the trial the court was requested to charge the jury : "That if Cunningham & Co. received

the cotton under the bill of lading and made advances to or for the use of Williams on the faith of the bill of lading, without notice by the bill of lading or otherwise that Williams was not the real owner of the cotton, then Cunningham & Co. are protected to the extent of the advances made in good faith and without notice.

" That the cotton having been shipped in the name of Williams, he is to be deemed the true owner thereof so far as to entitle Cunningham & Co. to a lien on the cotton for any money advanced to or for the use of Williams, if the money was advanced on the faith of the bill of lading, without any notice that Williams was not the true owner."

The plain object of these requests was to control the case by the following provisions of the statute enacted in 1830, known as the factors act :

" SECTION 1. After this act shall take effect, every person in whose name any merchandise shall be shipped, shall be deemed the true owner thereof, so far as to entitle the consignee of such merchandise to a lien thereon :

" First. For any money advanced, or negotiable security given by such consignee to or for the use of the person in whose name such shipment shall have been made ; and

" Second. For any money or negotiable security received by the person in whose name such shipment shall have been made to or for the use of such consignee." (3 R. S. [5th ed.], 76, § 1.)

Before the enactment of this statute an English act had been passed upon the same subject. The object of both, it has been held, was to increase " the facilities of trade by legalizing and explaining the cases in which a party could sell or pledge property at sea, in the ship at dock, or lying in the warehouse, subject to the payment of duties. Historically the necessities of trade and the custom of merchants had, in both countries, anticipated the statutes. And the benefits of the statutes and custom are too evident and too great to allow us to narrow the construction of the law. And there is no sound principle which would oppose a liberal view tending to enlarge the facilities of transfer, since these acts but follow out the general rule that every man is bound to take care not to select an agent who will do acts to injure other persons." (*Cartwright* v. *Wilmerding*, 24 N. Y., 521, 529.) The English act was more

restricted in its terms than those made use of in the enactment of the first section of the statute of this State. But it made the shipment of merchandise controlling evidence that it had been intrusted to the person named as the shipper for the purpose of consignment or sale, and for that reason provided for the protection of the consignee, who advanced money or negotiable securities on the faith of the shipment without notice of the existence of an adverse title, unless the contrary should be made to appear by bill of discovery or otherwise, or be shown in evidence by the person disputing the fact. (46 English Statutes at Large [6 George IV], chap. 94, pages 527–8, § 1.)

For that reason, if the act of this State was enacted to maintain and promote the same policy, and should be subjected to the same construction as that in terms required by the English act, the defense made in this case ought to have been allowed to prevail. For upon the bill of lading showing that the cotton had been shipped in the name of Williams, it was to be assumed that it had been intrusted to him for consignment or sale at least; and, therefore, or money or negotiable securities advanced upon it by the consignees he should be legally protected against claims to it asserted by other persons. And no evidence was given tending to show that it had not been so intrusted. He had previously consigned cotton to the defendants in a similar manner, and that circumstance indicated him to be a shipper as well as dealer in it. When the plaintiffs delivered him the cotton, there was reason to believe that it was understood that he would endeavor to dispose of it as he did, notwithstanding the special agreement made concerning the title to it. And from the circumstances as well as the nature of the commodity, it could be inferred that a delivery for consignment was intended. If that was to be made in the plaintiffs' name for the protection of their interest under the contract, the defendants could not be prejudiced by the departure made from that plan, by the shipment in the name of the vendee. If a shipment was contemplated at all, and the cotton was intrusted to the vendee to make it in any form, the statute would protect the consignees in their advances, even though he made it afterwards in his own name without authority.

But the act of this State has not, in terms, imposed even this restriction upon commercial transactions affected by the provisions contained

in its first section. They are broad and unlimited in their effect, and apparently intended to include all cases where the person intrusted by the owner in the course of trade with the possession of merchandise, ships it in his own name, and the consignee in good faith, and without notice that the appearances are not truthful, advances money or negotiable securities upon it for the use of the person in whose name the shipment has been made.

These are the plain terms of the law, and it should be construed and carried into effect by means of the same rules of construction that have been habitually applied to the interpretation of other statutes.

The provisions made have been frequently before the courts in other cases, but not under circumstances requiring their application to the decisions pronounced. In those cases it has been intimated that a more restricted construction than that indicated should be placed upon the broad language used by the legislature. (*Covill* v. *Hill*, 4 Denio, 323; *First National Bank of Toledo* v. *Shaw*, 61 N. Y., 283, 297.) In the decision of the last case, what was said in the case of *Saltus* v. *Everett* concerning the inability of a mere possessor of personal property to transfer the title to it was approvingly repeated. But as that case arose before this statute was enacted, its decision ought not to be allowed to control its application. The same observation is equally as applicable to the case of the *Mechanics and Traders' Bank* v. *Farmers and Mechanics' Bank* (60 N. Y., 40), for it was held by the decision that it was not brought within any provision of the statute, for the reason that the money had not been advanced by the consignee of the property. The succeeding case of *Howland* v. *Woodruff* (id., 74) was disposed of under the third section of the act. But still the theory, it maintains, sanctions the binding nature of advances made in good faith and without notice of any infirmity of title after the possession has been intrusted by its owner to the factor, or agent receiving the money.

The statute was evidently enacted as a regulation of trade to change the law as it was declared and applied at and before the time of its passage. That was considered to be the intention and effect of the English act, whose language was made much more restricted than the act of this State. (*Hatfield* v. *Phillips*, 9 Mees & Wels., 647, and references in the note at the end of the case.) The

evidence of that intent is much more cogent in the present instance, from the circumstance that the legislature has subjected the language used to no restriction whatsoever, beyond that which is to be implied from the transactions themselves, which it was the purpose of the law to regulate and define.

What seems to have been intended, was to impose upon the owner of merchandise intrusted by him in the course of trade to the possession of another person, the legal consequences of the violation of the confidence reposed by him in the person selected as its custodian. By that circumstance he places another in the position where he may successfully deceive others acting *bona fide*, and without notice that the appearances exhibited are fallacious. And as to the class of cases mentioned in the statute, it was the object of the legislature so far to change the prevailing doctrine of the common law, as to place the responsibility for loss upon the party who should confidingly create such appearances. The requests to charge were based upon such a construction of the law of this State. And the fact that the title itself did not vest in the shipper, either by the terms of the contract of sale, or those of the statute of the State of Georgia, was not sufficient to justify their refusal. The money was advanced by the defendants, and the property was delivered to them under the shipment of it, within this State. And so far as their rights were concerned, they arose under its laws, and were not controlled by the statute of the State of Georgia. The judgment should be reversed and a new trial ordered, with costs to abide the event.

BRADY, J., concurred in the reversal of the judgment.

Judgment reversed, new trial ordered, costs to abide event.