By the Court—Robertson, J.
The correspondence between the plaintiff and his agents, (Starling, McOulloh & Co.,) particularly his letter of the 11th of August, directing them “ to sell to the best possible advantage on arrival,” fully establishes their authority to sell; thus giving them at least one of the powers mentioned in the third section *509 of the New York factors’ act. (3 R. S., 76, 5th ed. ; N. Y. Sess. Laws of 1830, p. 203.) Whether any private restric tions as to price, time, mode, or any other qualifications of the power affect it under that statute, will, if necessary, be considered hereafter. ,
The absoluteness of the control of such agents over the merchandise in question is established by the course of dealing between them and the plaintiff; by their constantly making advances beyond the value of any property of his in their possession; relying upon and employing consignments, as they arrived, to reimburse themselves; and by their constant delivery of other articles similarly consigned to them to persons to whom they sold them. Whether the deposit by them of the corn in question, with a storekeeper of their own selection, deprived them in law of that control or possession, will also be considered hereafter.
A custom and usage in regard to factors taking receipts in their own name from a storekeeper with whom they have deposited goods, as well as the faith reposed in such receipts, is established by the testimony of two grain dealers, (Dows and Herrick,) as well as one of the defendants, (Carson.) Herrick testified that they took “no other vouchers but the receipts; ” Dows, that “ it is customary to advance money on the warehouse receipt.” The defendant testified as to the general custom, and the storekeeper with whom the cargoes were stored that they required orders from the original storer. Upon these points there is no conflict of evidence.
Actual custody of .the merchandise advanced upon, or possession of documentary evidence of a right of possession or title to it, is material under the statute in question. It is, therefore, proper to state what may, from the foregoing conclusions, and the evidence in the cause, be considered to be undisputed facts, having a bearing upon a right of the defendants to retain such possession in addition to those considered to be so by the learned Judge on the trial. They are: (1st.) The plaintiff’s forwarding to his agents *510 bills of lading of the goods, which made them deliverable to the latter at the Atlantic docks. (2d.) His authority to them to sell. (3d.) Their sale and delivery of some of such goods without storing. (4th.) Their practice of advances to the plaintiff on the faith of future consignments. (5th.) The usage of factors to deposit goods so consigned to them, in their own names and subject to their own orders exclusively, and lastly, the ability of the defendants to take, and their actual taking, possession of the corn, without interruption, on their surrender to the storekeepers employed by the plaintiff’s agents, of the receipts of the former, indorsed to the defendants by the latter.
The only facts considered as material and undisputed on the trial by the learned Judge in his charges were: First, The plaintiff’s ownership of the merchandise in controversy, and his consignment of it to Starling, McOulloh and Oo., his factors; and, Secondly, The obtaining advances by the latter upon it, by depositing the receipts, which they had taken in their own name from the storekeeper with whom they had stored the cargoes. The only questions submitted to the Jury were, in substance: First, Did the defendants, on the faith of the receipts, advance any money to the plaintiff’s factors? Secondly, Was such firm intrusted with such receipts by the plaintiff within the meaning of the before mentioned “ Factor’s Act,” (2 R. S., 76, 5th e'd.;) and, Thirdly, Had the defendants reason to believe, from the facts and circumstances attending the transaction, or were they such as to induce a man of ordinary prudence to believe that some person other than the plaintiff’s factors (Starling, McOulloh & Oo.) owned the goods ? He altogether withdrew from the consideration of the Jury the question whether the defendants made their advances on the faith of the possession of the goods themselves; but instructed them that the defendants were chargeable with notice or knowledge of the want of ownership by the factors, if they should answer the third question in the affirmative.
By withdrawing the question of possession of the goods *511 from the Jury, the learned Judge evidently held that there was no evidence of such possession as was required by the statute in question, and, by permitting the Jury to determine notice of want of ownership by the factors, that such notice was fatal to the defendants’ claim for advances. If such notice was material, the right to infer it from circumstances was probably correct. (Navulshaw v. Brownrigg, 2 De G., M. & G., 441.) But such instructions would be erroneous if the factors, (Starling, MeOulloh & Go.,) at the time of the advances, had such possession of the goods as the statute contemplated, and the advances were made on the faith; not of their absolute ownership of the goods, but of merely a right to dispose of such ownership. In such case, knowledge of want of ownership alone, would not be sufficient.
The instruction in regard to the possession of the merchandise in question was undoubtedly given through deference to the doctrine laid down in Bonito v. Mosquera, (2 Bosw., 201,) decided at a General Term of this Gourt. The governing principle of that case, however, has since been overturned by the more recent case, decided by the Court of Appeals, of Cartwright v. Wilmerding, (24 N. Y. R., 521.) In the first mentioned case, some of the defendants were consignees of goods from abroad, with authority to sell them. Such goods had been stored in a warehouse of the United States government, and no duties had been paid upon them. And although such defendants had in their possession, besides the bill of lading, the receipt of the warehouse keeper, and a Custom House license to withdraw the goods on paying the duties, they were held not to have such possession of the goods or to hold such documents of title as, under the statute, to give the other defendants, to whom they had pledged the goods for advances, any lien thereon. To sustain that view, it was further held, that the custody of the goods by the United States officers, as security for duties, reduced the consignees’ possession, or their right to it, by virtue of the bill of lading, to one merely constructive, as contrasted with *512 an actual one assumed to be intended by the statute, and also prevented the documents held by them from being intrusted to them as factors, as required therein. Both these principles were overruled in the last mentioned case in the Court of Appeals. The learned Judge Avho delivered the opinion of that Court in that case held, that what he termed “ possession in law” Avas sufficient to satisfy the requisition of the statute, and that the mere detention of the goods by the United States officers for duties did not take such possession away from the factors. On that point, starting with the self-evident proposition, that the “ possession in law of the goods was in the factor, unless it was in some one else,” he argued that “the legal possession must be either in the person who placed them in the warehouse or in the keeper of it; that the latter is to be considered to he the agent of such person;” and that so far as the carrier is concerned, in whose actual keeping such goods last were, he has nothing further to do Avith them when “the tránsitos is ended” by depositing them in such warehouse; that, without- regard to the statute under consideration, the factors “ were in legal possession of the goods subject to the government lien ; and, under the statute, they were either in possession of the goods or of a «, document of title mentioned in the act;” and whichever they had they were intrusted with it Avithin the meaning of the act. The actual difference of views between this Court and those of the Court of highest resort, turned, ■ therefore, first, upon the effect of the custody by United States officers to deprive factors and consignees of actual possession, so as to render their possession (if any) not such as was recognized by the statute; and, secondly, upon the necessity, in such case, of being furnished with documentary evidences of title or right of possession emanating from the owners. This Court evidently, in the case just cited, held the statutory possession of goods by factors to be nothing less than manual prehension or physical dominion, and the documentary evidence required by it to be such as owners furnished directly to their *513 factors. If the last' were so, of course, factors could never obtain advances on goods consigned to them, unless stored in warehouses of which they were possessors and occupants. The appellate Oourt, however, declared the deposit of goods in the warehouse of the United States, under control of their officers, to be “ a mere restraint on removal, not interfering with the right of possession,” and held that, upon either that ground or that the Oustom House documents were those intended by the statute, the lien for advances was protected.
I cannot but think (as I hope presently to be able to show) that a misapprehension or insufficient examination of the cases of Phillips v. Huth, (6 Mees. & W., 572; S. C., 12 Cl. & Fin., 356,) and Hartfield v. Phillips, (9 Cl. & Fin. A. C., 609 ; S. C., 14 Mees. & W., 665,) led to the erroneous views taken in Bonito v. Mosquera, of the origin and nature of the documentary evidence required by the statute, so far as they warrant the inference that its third section was confined to actual possession or documentary evidence of a right to it, emanating exclusively from the owners. Particularly,- as in that very case the eminent Judge who gave the opinion of this Oourt conceded that such section was intended to embrace every mode by which possession could be delivered or title transferred, even while he held the stoppage in the Oustom House to be a hindrance to both. The English cases last alluded to turned upon a distinctive provision or feature of the English factors’ act, which is not retained in ours, noticed specially in another case by eminent authority as the ground of such decisions. I may also remark here, incidentally, that the cases of Zachrisson v. Ahman, (2 Sandf. S. C., 68,) Stevens v. Wilson, (6 Hill, 512; S. C., 3 Denio, 472,) and Covill v. Hill, (4 Denio, 327 ; S. C., 2 Seld., 374,) will also be found, upon examination, to have pro-ceded upon entirely other grounds than the necessity of a physical custody of the goods by factors, in order to render advances to them valid liens; as authority for which last position they are cited in Bonito v. Mosquera.
*514 Even without applying to this case the decision in Cartwright v. Wilmerding, (ubi sup.,) I am entirely unable to discover from any evidence, when, in what way, or by what means, the plaintiff’s factors lost the possession of the goods in controversy, which they had acquired by their delivery to them on the wharf, under the bills of lading. Although directed by the plaintiff to store them, the place of storage was to be of their own selection. If they ever abandoned that possession, they lost all their lien for advances, (Patten v. Thompson, 5 M. & Seld., 358; Kinlock v. Craig, 3 T. R., 119, 783,) which it is not to be presumed they ever did. The depositary neither knew nor recognized any other owners than those from whom he received the goods, in whose name he gave receipts, and upon whose order he delivered them to the defendants. The factors must have had a right and authority to make delivery of what was sold by them, and the storekeeper could not rightfully question such delivery. They were in the habit of delivering goods received and sold for the plaintiff. There was no other mode of retaining possession, except by placing the goods in a store of their own. Laying out of view, therefore, entirely, the storekeeper’s receipts, which were mere acknowledgments of a right of possession in the factors, given for facilitating commercial operations, the goods were as much in the factors’ possession in the warehouse as on the wharf. They certainly did not go back into the owner’s possession, by being placed in charge of a storekeeper, when each was unaware of the relation of the other to such goods. Bor was there any fraudulent concealment of the owner’s interest in not notifying the storekeeper thereof, since he was an employee of the factors alone. There was no deviation in that, from an ordinary course of business. Any artificial construction which should make such a storekeeper’s possession that of the owner and not of the factors, would make the statute a snare for an honest pledgee instead of a protection.
The word “ possession,” so susceptible of various constructions, is.particularly so in statutes where its meaning *515 must be ascertained from the purpose of the whole statute and the context where it is used. In that under consideration, I cannot doubt it means such control of or dominion over merchandise, as to enable a factor rightfully to take possession of it, without the aid of any new authority dr document furnished by the owners, as in contradistinction to a right derived from documentary evidence furnished by owners, or obtained by factors by means of their right of possession of the goods. A similar meaning is attributed to it by Justices Erle and Compton in Marvin v. Wallis, (6 El. & Bl., 734, 735,) where they distinguish it from manual grasp or physical custody. A similar interpretation is given to it in Harris v. Pratt, (17 N. Y. R, 257,) by Denio, J. (See also Year Book, Edw., II, Trin. T., per Maynard, J., and Regina v, Smith, 33, L. & Eq., 531.) I therefore entertain no doubt that both the virtual control of the corn in question by the factors, (Starling, McCulloh & Co.,) and the documentary evidence of such control, title or right of possession held by them, with the plaintiff’s assent, were such, as to qualify them to make a valid sale or pledge of such corn, under the provisions of .the third section of the statute under consideration.
The other question, however, arising in this case, to wit, whether, assuming that there was evidence in the case of knowledge by the defendants of want of ownership by such factors, such knowledge would prevent any lien for advances by the former from attaching is still to be solved. A casual remark of Ch. J. Oakley, in the case of Zachrisson v. Ahman, (ubi sup.,) that if the person who in that case had procured the advances had been the owner’s agent,, the pledgee could not retain the goods because he knew of the (real) ownership, has been converted into authority for the doctrine that knowledge of the real ownership by a pledgee of goods, would defeat his lien. But the phrase will'be found to have been purely.incidental, as the decision in that case was placed upon several other grounds, any one of which would have been amply sufficient to sus *516 tain it. Those were, that the person pledging was not the owner’s agent, had no control over the goods, and was not intrusted with the bill of lading. Steavens v. Wilson, (ubi sup.,) referred to in the last mentioned case, by the learned Chief Justice, as authority for the principle so laid down by him, does not sustain it, nor was it necessary for the decision in such case, which proceeded upon other grounds, as will presently be shown. In Covill v. Hill, (ubi sup.,) only the first and second sections of the statute in question were under review, as expressly appears by the report of that case, which second section expressly provides for notice of want of ownership. Besides, in that case, the person assumed to be factor never was intrusted by the owner with the possession, either of the goods themselves or any documentary evidence of title. He was merely a proposed vendee, while the owner was entitled to and did retain both the possession of and title to the goods, and even of the bill of lading, until the purchase money was to be and was paid by the purchaser. In the case of Bonito v. Mosquera, already referred to, the question of notice of want of ownership was not raised, and was not necessary to the decision of the case; which also proceeded wholly upon entirely different grounds, as has been already seen.
In the case last referred to of Bonito v. Mosquera, the learned Chief Justice who delivered the only opinion given therein, in incidentally undertaking to point out the dissimilarities between the factors’ act of this State and that of England, noticed the absence from the third section of the former of the notice spoken of in the second section of the latter, adding, casually, that “its presence expresses no more than in its absence the law ivould imply.” He also referred, as authority for such proposition, to the cases of Zachrisson v. Ahman, Stevens v. Wilson, and Covill v. Hill, just commented on, being evidently misled by the casual remark of his predecessor in the first of those cases already allude#! to. A similar error crept into the opinion given in Cartwright v. Wilmerding, (ubi sup.) Chargeability with *517 such notice, is therein stated to have been correctly held to be implied in our statute, and “to be a condition on which the validity of any sale or pledge depends,” and Stevens v. Wilson, and Covitt v. Hill, are again invoked as authority for the principle; although the first did not profess to decide any such question, and the second certainly did not pass upon it. However inclined to defer to the learning and accuracy of the able Judge who delivered that opinion, I think, in regard to such doctrine, it will be found not to be sustained by principle or authority. It was admitted in such opinion, not to be necessary to the decision of the case, because he declares expressly therein that “nothing that the defendants were bound to examine gave them notice of want of title.,, The general finding of the Court below of good faith in the advances, was undoubtedly held to involve ignorance of the true ownership, but that merely reiterated the doctrine previously pronounced.
So that the reported cases, in which it has been asserted that the fatal effect upon the lien of advances to a factor of knowledge by the party making them of such factor’s want of ownership, are reduced to those of Zachrisson v. Alman, and Bonito v. Mosquera, (ubi sup.,) the latter, to a certain extent, following the former. We have seen that those two cases are not authority for the point, and in citing them as such, I cannot but think that the learned Judge of the Court of Appeals, in the case of Cartwright v. Wilmerding, fell into an error by not comparing the principles laid down in those cases with the facts thereof or the authorities cited for them. I may, therefore, be considered as not wanting in respect to the decisions of a higher court, or of this, or in deference to eminent learning and ability, if I examine as a new and open question the effect on a pledge or sale of goods by a factor, of knowledge by a pledgee or vendee of his want of ownership.
The sixth section of such factors’ act provides, and was plainly intended to provide, for sales or pledges of goods *518 by a factor, without any authority to dispose of them, whether he had possession of the goods or held documentary evidences of right thereto or not. The third section was intended to apply when such factor had some such authority; and one of its purposes was not only to abolish the universally admitted harsh rule of the common law, (Williams v. Barton, 3 Bing., 139, per Best, C. J.,) which made pledges by a factor, authorized only to sell, void, but to break down all distinction between an authority to sell absolutely, and one to transfer conditionally by a pledge. It expressly gives as much validity to every disposition, whether a sale or pledge, for money or obligations in writing, by a factor, of merchandise, with the possession of which, or certain documentary evidences of right thereto, he may be intrusted by the owner (in the former case for the purposes either of a sale or pledge) as if he were such owner, without any authority in the former case and without any distinction as to the nature of the authority in the latter case, whether it was to sell or to pledge. If, notwithstanding a compliance with all the conditions of such section, ignorance by a vendee or pledgee of a factor’s want of ownership of the goods sold or pledged, is also required, because knowledge thereof would render him chargeable with the precise nature of the factor’s authority, a strange result would ensue. The existeuce of a particular authority would be sufficient to validate the contract, but knowledge of such authority by the party making such contract would invalidate it. If so, a pledgee or vendee of goods in the factor’s possession, in producing proof of the factor’s authority in any case where his sale or pledge may be assailed, must be careful not to disclose that he knew what it was. As such a result could not have been intended for any conceivable rational purpose, an intention to produce it cannot be imputed to the authors of the law. The consequence would be that it would never be safe to deal with a known factor or commission merchant, since knowledge of his want of ownership would require a dealer with him to ascertain the nature of his authority.
*519 The only language in such third section which gives rise to any such idea that knowledge of a factor’s want of ownership is fatal to the contract, are the words “ on the faith thereof,” which terminates it. It seems to have produced some perplexity to ascertain to what the demonstrative “ thereof” refers. Grammatically it refers to “ merchandise ” as. the last preceding noun. But all advances and purchases are made on the faith of the goods. In Stevens v. Wilson, it is held not to refer to them but to “ usual indicia of title,” (per Bnosrsoür J., 6 Hill, 512,) or rather “ possession of the goods or documents of title,” (per Lott, Senator, 3 Den., 479,) and it will be found very difficiilt to give it any other application. The word “ ownership,” or some similar word, must be intended in order to make a belief in the factor’s ownership essential to a valid pledge or sale. The previous use of the term in" the phrase by which the factor is said “ to be deemed -to be the true owner,” would not authorize any such principle. The whole of such phrase must be taken together, in which the statutory or imaginary ownership of the factor is limited to merely validating the contract, which might have been effected, it is true, by a less circuitous expression. At all events it confers only so much of ownership as may be necessary to transfer it,' which is a power of disposition. The accompanying words “ on the faith,” might imply confidence in the gift, by the statute, of so much of ownership to the factor, as would make his contract, whatever it was, valid, or of something which the possession of the goods or documents of title would seem to indicate. That possession was required by the statute for some purpose and reason, and that was the evidence it afforded of a complete right of disposition by the control thus exercised. The existence of an authority to sell or pledge, was not considered sufficient without such additional outward evidence. Faith in such possession would imply, therefore, belief in that of which it was so evidence. It would matter but little whether that, on faith of which the contract must be made in order to be valid, was the exist *520 ence of some power of disposition or the evidence of it, if knowledge of the factor’s agency would not impose, on dealers with him, the necessity of inquiring into its precise limitation.
No difficulty would have arisen as to the application of the word “ thereof,” if the statute had simply enacted that every sale or pledge of merchandise made hy factors, whose authority over them was either one to pledge or one to sell, and who were intrusted by their owner with the possession of them, or of documentary evidences of a right thereto, should be as effectual as if he were owner, if made on the faith thereof. In such case, “thereof” must refer either to such possession alone, or such possession accompanied by such authority. By the first section of such statute, advances to shippers of goods are made valid by the same circumlocutory expression of being deemed owners, &c. Yet it was considered necessary to add a separate section, (§ 2,) in order to except from its operation cases where the shipper was known to the person making the advances not to be tlje owner. One of two things must, therefore, be true, either “ on the faith thereof” does not mean a belief in the ownership of the person who made the sale or procured the advances, or else such separate ; provision was as necessary for the third as the first section. But in fact the origin of this omission, in the case of the former, will be found in the statute upon which the New York factors’- act has been modeled, as was acknowledged in both Bonito v. Mosquera and Cartwright v. Wilmerding. The third section of the former combined two sections of the model act, (6 Geo. IV., c. 94, 2 & 4,) condensed by a subsequent act into one, (5 & G Vic., c. 39,) and was not a transcript of the fourth section of such act only, as was erroneously assumed in Bonito v. Mosquera, as will plainly appear by a comparison of the sections. That fourth section of the English act, as well as the first one of ours, required no authority from an owner to a factor, to make the contract of the latter good, under the circumstances therein mentioned; nor did *521 it require belief or a faith in anything. That section being applicable to sales, required knowledge, by a purchaser of goods from an agent, not only of the latter’s want of ownership, but also of authority, thus making possession conclusive evidence of authority in the absence of notice to the contrary. Such provision was intended, as was declared in Navulshuw v. Brownrigg, (1 Sim., N. S., 583,) to protect dealings with even well known factors, which, in this case, were held by the Court to be invalidated by knowledge of their character. The second section of our statute, however, confines the invalidation of contracts mentioned in the first section, being merely pledges for advances, and not sales, to cases of notice of -want of ownership, thus requiring pledgees of factors, who are well known as such, to take the risk of their authority to pledge. The second section of the English act, which confirmed sales, although the authority was merely to pledge, and provided for pledges made by factor’s holding, with the owner’s assent, documentary evidences of title, expressly required, however, the advance to be made “ on the faith of such documents,” with which words it concludes. The third section of our act, however, -which is equally indifferent with such last mention eel section, as to the extent of the factor’s authority, provided it be one which could change the ownership, and which places possession of the goods, relied upon in the fourth section of the English act, on the same footing as to its influence on the contract with the" possession of documentary evidence of title required by the second section of the latter act, appears to have substituted the word “thereof” at the end for the words “ of such documents ” at the end of the English second section, simply in order to 'embrace thereby, the possession of the goods with that of evidences of title, and for nothing more.
In both the acts just mentioned, however, “ on the faith,” as applied to such possession of the goods, or of documentary evidences of title to them, must, therefore, mean whatever such possession of goods or documents *522 would naturally induce any person to believe,' which statutes and common experience concur in holding to be authority to transfer the ownership, only; therefore, something within the knowledge of the vendee or pledgee, adapted to shake thát belief in the mind of a person of ordinary intelligence, would be considered as depriving his contract of the element of “ faith ” in such possession of goods or documents, either as to the last under the second section of the English act, or both under the third section of ours.
It has been assumed, or rather, I should say, conjectured, because made without sufficient examination of the course of legislation in England, the extent to which we have adopted the provisions thereby made, and the results ofe experience in that country, that the only evil intended to be remedied by the factor’s acts of either country, was the invalidity of pledges by factors having merely authority to sell. That common law rule did not proceed upon any principle of fraud, but simply deviation from authority, and it was proposed to be changed, because the greater power to sell absolutely included the less to sell conditionally, or delegate a power to sell. The factor might sell previously, without disclosing the name of his principal, and give the purchaser a right to pay the price by setting off a debt due from the factor, never receive the price, or appropriate it to his own use, and still the sale would be good.’ Such a change was, therefore, necessary to extend the principle to all cases. The fourth section of the English act entirely ignored any such policy, as it did not confirm pledges at all, and made sales good, without any authority over them, except that arising from simple possession of the goods, thereby introducing an entirely different principle, to wit, that of a presumption of authority from such possession; particularly as it expressly made notice of want of authority fatal. Its second section confirmed sales even when the factor’s authority was confined to pledging, but invalidated all pledges alike, if there was no authority to pledge, when nob made on the faith of the *523 possession of documentary evidences of title. The origin of the distinction between the two sections, in not giving to the possession of the goods by a factor, in that last mentioned, the same effect as to his possession of evidences of title, seems to have been the lingering greater regard for the rights of the owners than for those of purchasers. For, in Hatfield v. Phillips (9 Cl. & Fin. a. c., 609; S. C., 14 Mees. & Wels., 665) Lord Denmais assigns as a reason for such distinction, in substance, that owners, being able to “ earmarlt ” documents of title with the goods in' their possession, are in fault if they do not do so, while they cannot protect themselves by earmarking goods after a change of possession. Upon that distinction the case last mentioned, as well as those of Phillips v. Huth, (6 Mees. & Wels., 572; S. C., 12 Cl. & Fin. a. c., 356,) and Blose v. Holmes, (2 Mood. & R., 356,) turned. All of them merely repudiated the right Of a factor, having only possession of the goods, and thereby brought only within the fourth section, even if he had a right to sell to fabricate evidences of title, so as to bring himself within the second section, and thus procure advances. It was from overlooking the principle of that distinction in those cases, this Court, were induced, in Bonito v. Mosquera, to hold upon their authority, that our statute required the documentary evidence therein referred to, to emanate directly from the owner instead of being merely such as should protect the right of, or originate in possession. The factors’ act of this State" was passed five years after the first English statute on which it was modeled, and in which it made some changes already adverted to. Except in its first section, which was confined to shippers of merchandise, it required, besides the possession of goods or of evidences of title thereto, the existence of some authority to dispose of them, to render a transfer of any kind by a factor valid, differing therein from the fourth section of the English act, but was indifferent to the limitation of the authority as in the second section of the English act. It thus got rid entirely of the common law restriction already referred to, as to a devia *524 tion in the exercise of a power to sell. Its third section, also, by combining the possession of the goods required in the English fourth section, with that of the documents mentioned in its second, broke down all distinction as to their influence on the purchaser or his relative duty, and thus abandoned the last relic of superior regard for the owner’s rights over those of the purchaser, exhibited in the English statute, and having done so, only substituting “thereof” for “ of such documents,” after “ on the faith,” rendered necessary by coupling possession of goods with that of documents. It should not be construed as intended to effect anything more thereby in case of possession of the goods than was done in the English statute as to documents, and that is as was held in Stevens v. Wilson, (ubi sup.,) as indicia of title or authority to transfer. Besides, as I have already shown, notice of want of ownership could not have been intended thereby, because it, when intended, is made the subject of a separate section in an act, (32,) and is expressly inserted in the fourth section of the English act, which is adopted in the third section of ours, as modified, without it. •
The remark of the learned Judge who delivered the opinion in Cartwright v. Wilmerding, that the scope of the two statutes was different, appears to me, after making allowances for the changes already adverted to, too sweeping. He admits, however, that “the benefits of both statutes are too great to allow a narrow construction of the law.” He also notices that the effect of our statute upon the possessor of such documentary evidences of title, intrusted to him for the purpose of disposing of the goods, as gives him exclusive control of the possession, is to make him the owner for certain purposes. He can sell or pledge it, or, “ in short, treat it as his own.” To that I may add, that the possession of the property itself is made at least equally efficacious, by such statute, with that of evidences of title. That same opinion justly declares the Hew York statute to be more liberal (of course to pledgees or vendees) than the English one, *525 which it certainly would not be, if knowledge of want of ownership derived from the notoriety of the factor’s agency, should, under it, invalidate a pledge or sale, which is not done by the fourth section of the English act.
Notwithstanding the remark of Cranworth, V. C., in Navulshaw v. Brownrigg, (1 Sim. R. N. S., 583,) that, in ninety-nine cases out of a hundred, goods are put in the hands of factors for sale, and not for the purpose of raising money by pledge or deposit, the English statute, (5 and 6 Viet-., c. 39,) already referred to, was passed, amending the English, and subsequent to our factors’ act, which recites that “ advances on the security of goods and mer- “ cliandise had become a usual course of business,” and declares that the same protection ought to be extended to them as had been given to sales by factors by the existing statute, (6 Geo. IV., c. 94,) and that actual owners should be bound in like manner as in case of sales. By its provisions it adopts the protection given by our act to pledgees as well as vendees. By an entirely new provision, it sweeps away that part of the second section of the former act which invalidates contracts in case of notice of want of ownership. Combining such second and fourth sections in regard to the possession of goods, as well as of documentary evidences of title, it outstrips the liberality of our act, by not requiring any authority in the possessor to make the sale or pledge valid, unless the dealer with the factor knows its precise nature as being; to sell or to pledge only. It does not impose on such dealer, as the construction now contended against does, and the charge of the Court in this case required the duty of discovering such limitation by notice of the mere agency of ttie factor. Such statute may well be appealed to, as proof of the increasing necessity of greater care, in the pressure of a vast commerce, for persons making advances honestly to known factors, on the strength of their possession of goods, or evidences of title to them, if not in possession, than for owners, whose business and risk it *526 should hato select proper agents. It recites the necessity of sanctioning by law, practices generated by the wants of commerce; it should rather have been to convert into a general rule an incipient custom. It was admitted in Cartwright v. Wilmerding, in the Court of Appeals, that. ,both statutes “ were anticipated by the necessities of trade and the custom of our merchants.” The utmost that can be said against the aSTew York act, if, in order to protect a purchaser or pledgee who relied, as proof of the-authority of a factor, on goods or documents of title intrusted to him by the owner, notwithstanding he knew he was not owner, is that that threw the burden of the' honesty of the factor on his principal, anticipating in that respect, by but a few years, the legislation of a country supposed to be eminently conservative, although it still required the purchaser or pledgee to take the risk of such factors having some authority.
■ The wheels of commerce would move but slowly, if pledgees were obliged, at their own peril, to ascertain, in every case, in making an advance to a well known commission merchant, that he had just the authority he was exercising. A written authority, even if exhibited and known to be authentic, might have been revoked. Such inquiry of principals living in distant countries would require long delays and often defeat the object of getting advances. The business of a factor ■ often requires him to employ all the goods in his possession of various owners, to procure money to meet advances made by him in accepting and paying drafts of different principals, as was done in this case, as is generally understood that he must, and is not looked upon in any discreditable light. To tie factors down to using-only their own means in making advances in a country so young- yet so enterprising as ours, would embarrass trade, throw the business into the hands of a few wealthy, monopolizing capitalists, who could dictate their own terms and deprive energy and enterprise with small means but good credit,- of their fair share of a commission business. Outside of the language of the act and the history *527 of its origin, I cannot believe any such policy was intended.
I have, therefore, no doubt that “on the faith thereof,” at the end of the third section of the Eew York factor’s act, means “ on the faith of” the possession by the factor of the goods, or their evidences of title previously mentioned therein with the owner’s consent. That “on the faith” means relying on them as evidence of authority to make the disposition, made by the contract, in the absence of evidence or notice of anything to the contract. That the mere notoriety or avowal of a person’s business being only that of a factor, is no proof of the precise authority of such factor in a particular case, nor is it a fact which should put the persons dealing with such factor upon inquiry as to the precise nature of his authority, when that precise nature is immaterial, or makes him assume at his peril the duty of proving it. In this case we arrive otherwise at the absurdity, that although the statute authorizes a sale by a grantee of a power to pledge, and vice versa, and although Starling, McOulloh & Oo. (the factors) had virtual possession of the goods and of documents enabling them to do so, and the defendant may not have known their precise authority, yet the defendants, knowing they were factors, were chargeable with knowledge of such authority, and the common law rule is to prevail, which avoids a pledge by a factor empowered only to sell. This would make the failure of the statute to discriminate between different authorities the requisition of a possession by the factors of the goods, or their evidences of title with the owner’s assent and reliance upon anything mentioned in such third section, entirely immaterial, in the case of a known commission merchant.
The verdict in this case must have rested entirely on the notoriety of Starling, McOulloh & Oo., as factors on the 25th of August. Because although that existed on the 19 th as well as the 25th, and the only evidence of express knowledge of it by the defendant applied to the first date only, yet the Jury found a verdict in favor, of the plaintiff *528 as to the advances at the last date. So that it fully illustrates the consequences of the doctrine that a well known factor cannot procure advances unless he has authority to pledge the identical goods."
The judgment and order denying a new trial must, therefore, be reversed, and a new trial granted, with costs to abide the event.