Allen, J.
If by any protest on our part the profession could be induced to abandon the machine-made cases which, under the present system, have taken the place of the methodical and carefully prepared cases and bills of exception of former days, the court would plead earnestly for such a reform, as it would be a great relief to every court of review, and aid in the dispatch of business and in an intelligent administration of justice. Stenographers have taken the place of the attorneys whose duty it is to prepare, and of the counsel whose duty it is to peruse and examine, and of the judge who should settle cases and exceptions for the purposes of review. The rough, ill digested and defective, and frequently unintelligible transcripts and translations of the stenographer’s minutes of the trial, without correction or explanation, are stitched together and labeled a case, or exceptions, as may suit the fancy, and the labor is thrown upon the court to wade through a mass of stuff and dig out the kernel of facts or the point of an exception which may be buried up beneath it. Some parts of the case before us are entirely unintelligible; and the exceptions taken in the course of the trial are so interjected that it is not easy to place or apply them. It is very likely that parties may sometimes suffer by this process, which, while it saves the labor of the profession, very greatly adds to that of the court, and not unfrequently embarrasses it in arriving at a certain and definite understanding of the merits. A rule of the Supreme *78 Court might correct this evil to a great extent. The practice of printing the evidence by question and answer, in most cases, only benefits the printer. There are but few eases in which, for any purpose, this method of setting forth the evidence is necessary or proper. It ought, in justice to the attorneys for the present appellants, to be said, that the record before us compares favorably with the mass of those brought into this court, and is more perfect than many of them.
Without scanning very closely the precise relations between the plaintiffs and Griffin & Willets in respect to the grain in controversy, as evidenced by the documentary evidence and disclosed by the testimony, it will be assumed that the latter firm, commission merchants in Hew York, were the factors of the plaintiffs, the owners, and that the same was consigned to them for sale for a commission. It is conceded that the plaintiffs were the owners of the grain and that the defendants were merely the factors of the owners, without, so far as the case discloses, any lien upon or interest in the property, except as they might earn a commission upon its sale. The consignors might have at anytime changed the destination of the barley, or revoking the agency of the consignees, assumed the actual possession and control of it. (Mitchel v. Ede, 11 A. & E., 888.) No property was at any time vested in Griffin & Willets. The consignors did not intend to and did not by the delivery of the grain to the carrier at its place of shipment, vest the property in the consignee. During its transit there was no apparent ownership in Griffin & Willets which would have enabled them to pledge the barley to a third person; and there was no change in the possession or apparent ownership, after the arrival of the barley in New York, prior to the transaction with the defendants, which can affect the rights of the parties or give effect to the factors’ act so as to validate that transaction as against the plaintiffs. The title of the defendants must therefore rest entirely upon the provisions of the act of 1830 (chap. 179), known as the “factors’ act” (4 N. Y. Statutes at Large, 461); and unless *79 upon a just interpretation of that statute they acquired a valid title, the plaintiffs, as the rightful owners, were entitled to repossess themselves of their property.
The first’question is as to the precise extent 'to which the plaintiffs intrusted their factors with the possession of the property,, pr the documentary evidence of title. It is claimed that Griffin & Willets pledged the "barley to defendants as a security for the repayment of a loan of money upon the faith and credit of the pledge. At common law, a factor could not pledge the goods of his principal; and the statute referred to is designed for the protection of those who in good faith and in ignorance of any defect of title in the pledgor or of the claims of others to it, advance money or incur liability upon the faith of the merchandise and the ownership thereof by the pledgor, as evidenced by the possession of the property or the documentary evidence of title with which he has been intrusted by the owner. It is the act of the owner in intrusting the factor with the possession of the goods, or the documentary evidence of ownership, the apparent ownership and right of disposal, in connection with the fact that innocent third persons deal with him upon the faith of such apparent ownership, that estops the owner from following his property into the hands of bona fide vendees or pledgees, and gives the latter a better title than their vendor or pledgor had. I am aware that there has been some criticism upon section 3 of the factors’ act, and a doubt expressed as to what phrase or subject the last words of the section, “ upon the faith thereof,” refers. But reading the section in view of the clearly expressed intent of the legislature and the general scope of the act, which was not to deprive owners of their property without any fault or act of theirs, or to protect any but bona fide purchasers for value, it is very evident that the money must be parted with upon the faith of the property and the apparent title of the party assuming the right to deal with it, manifested either by the possession of the property or the usual documentary evidence of title. The act was intended for the security of those who *80 deal with a factor or agent in the belief that he is the true owner; and that belief must be induced by the act of the owner in intrusting the factor or agent with the apparent ownership. (Stevens v. Wilson, 6 Hill, 512; S. C., in error, 3 Den., 412.) A factor is an ag’ent for the sale of merchandise, and ordinarily, has the possession, management and control of the property, the subject of the agency; but the actual possession is not essential to constitute an agency which would pass under that name, as it is ordinarily applied, to distinguish it from agencies of other descriptions. The plaintiffs had not intrusted Griffin & Willets with any bill of lading, custom-house permit, or warehouse keeper’s receipt, for the delivery of the grain, and the latter firm had no documentary evidence of title. The manual possession was in the master of the canal boat “ C. F. Jewett,” in which the barley was mingled with more than 3,000 bushels of other like grain, belonging to and consigned by and to other persons. The possession of the master of the boat, in the absence of evidence of title, or interest in others, was that of the true owner. The grain was in the boat under a special agreement, making a part of the shipping bill in the possession of the master, and which was the only document in evidence tending to show the relations and rights of the parties— that the master was to hold the load for five days without charge, and after five days he was to hold it at one dollar and fifty cents and wharfage per day, until consignees removed load, to be paid pro rata by the owners of all the grain. The boat had taken the grain to New York on the last trip for the season, and the owners of the grain had therefore provided for storage in their own names until the grain should be sold. The jury would have been authorized upon the evidence to find that this was well understood by the consignees, and that the grain was not to be removed until sold. The factors did not even assume any right to control or direct as to the storage of it, and only directed its removal from the boat upon a representation that it was sold. It was not intended to intrust the consignees with the possession; it was not *81 necessary to their agency, there was no possession vested in them. They could not have obtained possession for the purpose of storing grain elsewhere except by violating the order's of the master of the boat, which the jury might well have found were known to them, and consistent with the directions to them from the plaintiffs directly. Possession, for certain purposes, may be either actual or constructive, and the circumstances must determine which is sufficient in a particular case to change or affect the rights of parties or the title to property. But as the possession intended by the act is that which may enable a fraud to be perpetrated upon one acting on the faith of it as evidence of ownership, it is self-evident that actual possession is required as distinguished from constructive possession. The act is in harmony with, and many of its provisions, including those of the third section, are based upon, the maxim that he who by his own act has put it in the power of another, by an apparent ownership of property to deceive others shall suffer, rather than those who innocently part with value upon the faith of such appearances. It is the open, visible appearances that give effect to the transaction and estop the owner from claiming his goods. The plaintiffs so far from intrusting their factors with the possession, did not contemplate a possession of the property by them. They gave authority to sell, and perhaps an incidental power to control and direct the bailee having the possession. A constructive possession cannot, without the aid of some documentary evidence showing that the manual possession of one is for the benefit of another, deceive any one. It is difficult to spell out a constructive possession of this barley in Griffin & Willets, who had a mere agency to sell, without authority to change the place of deposit, or to provide storage, or to direct its removal except upon a sale. A constructive possession can only be claimed in support of and based upon some interest in, lien upon, or title to property, in the possession of one as bailee or agent for a special purpose. It is the ownership absolute or qualified that draws to it the possession. But here it is sought to claim it as *82 against the rightful owners as to property in the 'hands of a bailee selected by the owners, and in behalf of those having and claiming, no interest in or lien upon it: This would be to build up a constructive possession inequitable and unjust, and which would deprive the owner óf his property for the benefit of one who did not act upon the faith of any apparent possession or right of possession, but upon the mere word and promise of the person with whom he dealt. This was not the object of the statute, and it cannot, legitimately, be so construed as to accomplish such a result. If Griffin & Willets had, before a sale of the barley, taken possession of it, and removed it to another place of storage, and taken a receipt in their own name and upon the faith of that receipt obtained an advance from the defendants, it could not be said then that .they- had been intrusted with the possession by the plaintiffs; and this is required by the statute to enable the factor to pledge the property or deal with it as his own.
The factors’ act was considered by the Superior Court of New York, in Bonito v. Mosquera (2 Bosw., 401), and an .elaborate and exhaustive opinion prepared by Ch. J. Dube, and concurred in by Justices Bosworth, Slosson and Wood-ruff. The learned chief justice reviews most of the reported cases bearing upon the construction and effect of the act, and among the propositions deduced from an examination of the .subject and formally advanced by the court is this: That the possession of goods by a factor “ not having the documentary evidence of title,” that can alone enable him to create a .pledge valid as against the owner, is an actual, as distinguished from a constructive possession. The principle was applied in that case. The decision is criticised in the same court by Ch. J. Robertson in Pegram v. Carson (10 Bosw., 505), concurred in by Judge White, and dissented from by Judge Monell. But the latter case is not in conflict witli the proposition referred “to, or with the plaintiff’s title to recover in this action. There, the factors to whom merchandise was consigned by the owner, for sale, wifli bills of lading making it deliverable to them, received the merchandise and *83 stored it, according to the usage of business, with a storekeeper employed by themselves, taking receipts in their own names; thereby having' not only the virtual control of the property, but the documentary evidence of such control, and the right of possession. That case was, probably, rightly decided, but the circumstances were essentially different from those which exist in the present. Cartwright v. Wilmerding (24 N. Y., 521) was similar in its facts and circumstances to Pegram v. Carson, and neither is applicable to the case in hand. The position that the possession of merchandise contemplated by the third section of the factors’ act, as essential to the power of factors to pledge the goods of their principal, is the actual and not a constructive possession, commends itself as reasonable, as in entire harmony with and all that is needful to give effect to the design of the act, and prevent fraud, and is the only interpretation of the act which, while it protects Iona fide dealers with the factor, at the same time gives due protection to the innocent owner of merchandise. Judge ¡Reynolds, in his dissenting opinion in the court below, we think, took the proper view of the case and the rights of the parties. The defendants’ claim to have advanced their money upon the faith of the grain, is at least doubtful, but we do not consider it.
The judgment must be reversed and a new trial granted, costs to abide the event.